**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI**

|  |  |
|---|---|
| MICHAEL DEAN VAUGHAN, | Civil Action No.: _____ 1:26CV589 |
| Plaintiff, | District Judge: **J. HOPKINS** |
| v. | Magistrate Judge: _____ |
| DEPARTMENT OF DEFENSE; DEPARTMENT OF THE ARMY; and NATIONAL GUARD BUREAU, | **MAGISTRATE JUDGE BOWMAN** |
| Defendants. | |

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF UNDER THE
FREEDOM OF INFORMATION ACT, 5 U.S.C. § 552, AND THE PRIVACY ACT OF
1974, 5 U.S.C. § 552a**
*JURY TRIAL NOT DEMANDED*

**INTRODUCTION**

1. This is an action to compel the Department of the Army to honor its obligations under two federal statutes it has plainly violated. Plaintiff Michael Dean Vaughan is a combat veteran who sustained blast-overpressure injuries from a rocket-propelled grenade strike in Afghanistan on June 20, 2008, producing permanent residuals, including ocular trauma, traumatic brain injury, tinnitus, and post-traumatic stress disorder, that the Department of Veterans Affairs has rated service-connected. He was separated from the Kentucky Army National Guard in July 2013 without the medical evaluation board federal law required, when his combined VA disability rating was 60% (including 50% for post-traumatic stress disorder); the VA did not rate him 100% Permanent and Total until December 2024. He seeks records from five Government components that have produced virtually nothing in response to five separately exhausted administrative

demands. This Court has both the jurisdiction and the statutory duty to compel production.

2. This Complaint presents ten independent Counts arising from five separately exhausted FOIA and Privacy Act proceedings: four against components of the Department of the Army, the Army Review Boards Agency (ARBA), the U.S. Army Legal Services Agency (USALSA), the U.S. Army Human Resources Command (HRC), and Headquarters, First United States Army, and a fifth against the National Guard Bureau (NGB), a joint activity of the Department of Defense established under 10 U.S.C. § 10501, which served as the final approving authority for Plaintiff's Line of Duty determination, exercised supervisory authority over the Withdrawal of Federal Recognition proceedings under 32 U.S.C. § 323 and NGR 635-101, and maintains the records at issue in Counts IX and X.

3. Scope and Purpose of this Action. This is a FOIA and Privacy Act action and nothing more. Plaintiff does not ask this Court to vacate, set aside, declare void, reverse, modify, or otherwise revisit any ruling, finding, order, judgment, or determination entered by any other federal court, military tribunal, administrative board, state court, or other adjudicative body. The only relief Plaintiff seeks in this action is what FOIA and the Privacy Act authorize: an order compelling the Department of the Army to conduct adequate searches, produce responsive non-exempt records, provide a legally sufficient *Vaughn* Index for any record withheld, grant Plaintiff's requested fee waiver or declare the denial unlawful under 5 U.S.C. § 552(a)(4)(A)(iii), and pay reasonable litigation costs. Plaintiff's narrative concerning fraud on the court, want of authority, regulatory violations, Westfall Act misuse, and other misconduct by Army officials and attorneys is set forth in this Complaint solely because it bears directly and dispositively on three

FOIA and Privacy Act questions properly before this Court: (a) whether any FOIA Exemption 5, 5 U.S.C. § 552(b)(5), assertion by Defendant is precluded or, at minimum, substantially weakened and subject to particularized in camera review and privilege-by-privilege testing under the crime-fraud exception, the government-misconduct exception, and the *Accardi* doctrine; (b) whether the foreseeable-harm requirement of 5 U.S.C. § 552(a)(8)(A) can be satisfied as to those records; and (c) whether the public-benefit and commercial-interest prongs of the fee-waiver standard at 5 U.S.C. § 552(a)(4)(A)(iii) are met. The documents Plaintiff seeks in this action will be used by Plaintiff to further develop the evidentiary record in the proper forums for the underlying relief he separately seeks: a pending petition for reconsideration before the Army Board for Correction of Military Records under 10 U.S.C. § 1552 (ABCMR Docket No. AR20120006999); imminent post-conviction proceedings in *Commonwealth v. Vaughan*, Kenton Circuit Court, Kentucky Case No. 14-CR-204; and a separately pending Army Office of General Counsel professional-responsibility referral under AR 27-26 concerning the conduct of LTC Dylan F. Seitz and other Army attorneys. None of those proceedings is before this Court, and this Court need not, and Plaintiff does not ask that it, decide any question reserved to those forums. The references in this Complaint to the conduct of the various officials and attorneys, and to the five *Demjanjuk* instances of fraud on the court, are not pleaded as freestanding causes of action and do not seek relief beyond the FOIA and Privacy Act production already prayed for. They are pleaded as factual predicates that the Court may consider in deciding the Exemption 5, foreseeable-harm, and fee-waiver questions properly before it.

4.     Counts I and II arise from ARBA's refusal to produce the complete administrative case file for ABCMR Docket No. AR20120006999, the Board proceeding in which Plaintiff is the named applicant. ARBA's entire production consisted of two documents already in Plaintiff's possession: the 2013 denial letter and the Record of Proceedings. Four of five requested record categories received no production. No exemptions were cited. No *Vaughn* Index accompanied the response. Plaintiff filed an administrative appeal mailed February 25, 2026, and delivered to ARBA on March 9, 2026 (USPS Certified Mail Tracking No. 9589 0710 5270 3358 2897 11). The twenty-business-day appeal deadline expired on April 6, 2026, without any determination, acknowledgment, or production. All administrative remedies as to Counts I and II are constructively exhausted.

5.     Counts III and IV arise from USALSA's March 12, 2026, adverse determination (FOIA No. FA-26-0002) and its failure to produce any responsive record, in response to two separately delivered demands: the original FOIA request dated February 19, 2026, and the supplemental Privacy Act letter dated March 2, 2026. In that single determination USALSA (a) deferred any search of Requests 1 through 4 for an estimated ninety days without producing a single document or identifying the scope of any anticipated production; (b) denied Privacy Act access to Requests 1 through 3 on the ground that the records are not retrieved by Plaintiff's name; (c) rejected Requests 5 through 10 as failing to *"reasonably describe"* the records and threatened administrative closure; and (d) denied Plaintiff's fee waiver and designated him an *"all others"* requester. On March 17, 2026, Plaintiff timely filed both a Challenge to the Requests 5 through 10 particularity objection (with reformulated descriptions and a fee-waiver appeal) and a Privacy Act Appeal to the Office of the General Counsel, Secretary of the Army; USALSA's OTJAG

FOIA office confirmed receipt of both on March 26, 2026. As of the filing date, USALSA has issued no further determination and has produced nothing. On June 8, 2026, USALSA issued a second determination asserting that *"a comprehensive search of the files described above revealed no records responsive"* to all ten categories, without acknowledging the March 17 reformulations or the pending Privacy Act Appeal, and Plaintiff filed a protective administrative appeal of that determination on June 12, 2026, without waiver of the constructive exhaustion already effected. These events are detailed below.

6. Counts V and VI arise from HRC's complete failure to respond to a comprehensive FOIA and Privacy Act request submitted April 8, 2026, delivered April 10, 2026.

7. Counts VII and VIII arise from Headquarters, First United States Army's complete failure to respond to a comprehensive FOIA and Privacy Act request received April 21, 2026; the 20-business-day statutory deadline elapsed on or about May 19, 2026, without response. The filing date of June 15, 2026, was chosen to allow that deadline to elapse prior to filing.

7.1. Counts IX and X arise from the National Guard Bureau's failure to respond to Plaintiff's FOIA and Privacy Act requests submitted September 29, 2025, and March 18-19, 2026, and to his February 22, 2026, Privacy Act and FOIA demand to the NGB Inspector General for his complete NGB-IG file (Exhibits 28, 29, and 32). NGB made no determination within the twenty-business-day period of 5 U.S.C. § 552(a)(6)(A)(i), produced no records, conducted no demonstrated search, and issued no *Vaughn* Index; all administrative remedies as to Counts IX and X are constructively exhausted under 5

U.S.C. § 552(a)(6)(C)(i). The June 1, 2026, supplemental NGB request is addressed in Paragraph 72 and is not relied upon for exhaustion of these Counts.

8. Plaintiff seeks declaratory and injunctive relief, including orders compelling adequate searches, full production of all responsive non-exempt records, legally sufficient Vaughn Indices for any withheld materials, fee waiver determinations, and an award of reasonable litigation costs and, if counsel appears or fees are otherwise legally available, attorney's fees under 5 U.S.C. § 552(a)(4)(E) and 5 U.S.C. § 552a(g)(3)(B).

9. Plaintiff contends that the records sought include *Brady* and *Giglio* material and bear directly on legal accountability proceedings Plaintiff will pursue in proper forums other than this Court, including (i) Plaintiff's pending petition before the Army Board for Correction of Military Records for reconsideration of Docket No. AR20120006999; (ii) anticipated state post-conviction proceedings under Kentucky Rule of Civil Procedure 60.02; (iii) anticipated Federal Rule of Civil Procedure 60(d)(3) fraud-upon-the-court motions; and (iv) anticipated personal-capacity civil actions against the individual federal actors implicated in the underlying conduct, including the threshold Westfall Act scope-of-employment certification questions under 28 U.S.C. § 2679(d)(1) that such actions necessarily present, and related questions of court-martial jurisdiction. Plaintiff is the defendant in *Commonwealth v. Vaughan*, Case No. 14-CR-00204, Kenton Circuit Court, Kentucky, a felony case in which he received a twenty-year sentence after a forensic psychological evaluation reviewed KYARNG military records transmitted to the Commonwealth without *Touhy* authorization. Plaintiff has prepared a Motion for Post-Conviction Access to the Presentence Investigation Report and *Brady/Giglio* Disclosure, identifying ten independent *Brady* violations arising from the same unauthorized records

U.S.C. § 552(a)(6)(C)(i). The June 1, 2026, supplemental NGB request is addressed in Paragraph 72 and is not relied upon for exhaustion of these Counts.

8. Plaintiff seeks declaratory and injunctive relief, including orders compelling adequate searches, full production of all responsive non-exempt records, legally sufficient Vaughn Indices for any withheld materials, fee waiver determinations, and an award of reasonable litigation costs and, if counsel appears or fees are otherwise legally available, attorney's fees under 5 U.S.C. § 552(a)(4)(E) and 5 U.S.C. § 552a(g)(3)(B).

9. Plaintiff contends that the records sought include *Brady* and *Giglio* material and bear directly on legal accountability proceedings Plaintiff will pursue in proper forums other than this Court, including (i) Plaintiff's pending petition before the Army Board for Correction of Military Records for reconsideration of Docket No. AR20120006999; (ii) anticipated state post-conviction proceedings under Kentucky Rule of Civil Procedure 60.02; (iii) anticipated Federal Rule of Civil Procedure 60(d)(3) fraud-upon-the-court motions; and (iv) anticipated personal-capacity civil actions against the individual federal actors implicated in the underlying conduct, including the threshold Westfall Act scope-of-employment certification questions under 28 U.S.C. § 2679(d)(1) that such actions necessarily present, and related questions of intra-military immunity. Plaintiff is the defendant in *Commonwealth v. Vaughan*, Case No. 14-CR-00204, Kenton Circuit Court, Kentucky, a felony case in which he received a twenty-year sentence after a forensic psychological evaluation reviewed KYARNG military records transmitted to the Commonwealth without *Touhy* authorization. Plaintiff has prepared a Motion for Post-Conviction Access to the Presentence Investigation Report and *Brady/Giglio* Disclosure, identifying ten independent *Brady* violations arising from the same unauthorized records

transmission, fabricated Hirte affidavit, and suppressed exculpatory evidence that are the subject of this Complaint. The records sought are also directly relevant to and will be used in a pending petition to the Army Board for Correction of Military Records under 10 U.S.C. § 1552, currently being prepared for filing, in which Plaintiff seeks correction of the records underlying his wrongful separation from the Kentucky Army National Guard. The FOIA production is a necessary predicate to the evidentiary completeness of both the post-conviction filings and the pending ABCMR petition.

10. The FOIA production sought here is relevant to those separate proceedings because the requested records concern Army legal-office communications, *Touhy* coordination, military-record handling, ABCMR file completeness, and the existence or nonexistence of records reflecting the government's contemporaneous handling of Plaintiff's military, litigation, and administrative files; Plaintiff does not ask this Court to decide whether those records ultimately prove any *Brady*, Westfall, Rule 60(d)(3), ABCMR, or professional-responsibility claim. Three consequences flow from this posture. First, it establishes that disclosure is in the public interest because it is *"likely to contribute significantly to public understanding of the operations or activities of the government"* and is *"not primarily in the commercial interest of the requester"* within the meaning of 5 U.S.C. § 552(a)(4)(A)(iii). Disclosure will contribute significantly to public understanding of Army legal-office operations, *Touhy* compliance under 32 C.F.R. § 97, military records handling under AR 600-8-104, administrative-board recordkeeping at the ABCMR and WOFR levels, and the exercise of federal litigation authority by Army attorneys under 28 U.S.C. § 516. Plaintiff has no commercial interest in the requested records. Second, it materially weakens any foreseeable harm claim under 5 U.S.C. §

552(a)(8)(A), because the agency cannot ordinarily articulate a cognizable harm from disclosure of records whose constitutional and administrative relevance is concrete and imminent in pending proceedings. *Plaintiff does not contend that Brady v. Maryland*, 373 U.S. 83 (1963), or *Giglio v. United States*, 405 U.S. 150 (1972), themselves compel release under FOIA independent of FOIA's own statutory standards; FOIA is not a criminal discovery statute. *See Rimmer v. Holder*, 700 F.3d 246, 257 (6th Cir. 2012). The constitutional materiality is pleaded only as bearing on the foreseeable-harm and public-benefit analyses properly before this Court. Third, it establishes urgency. The ABCMR reconsideration petition is pending, and the anticipated Kentucky CR 60.02, Rule 60(d)(3), and personal-capacity civil actions are each contingent on prompt completion of the FOIA and Privacy Act production sought here; the records are directly material to constitutional, jurisdictional, and scope-of-employment claims that will be filed in those proper forums upon receipt of the responsive records.

## SUMMARY OF COUNTS AND RELIEF REQUESTED

11. The following table summarizes the ten counts pleaded in this Complaint, the component to which each is addressed, the controlling statute, the categories of records sought, and the primary relief sought. The full Prayer for Relief is set forth at the end of this Complaint.

| Count | Component | Statute | Records Sought | Primary Relief Sought |
|---|---|---|---|---|
| I | ARBA | FOIA, 5 U.S.C. § 552 | Complete ABCMR case file (Docket No. AR20120006999), five categories | Search; production; *Vaughn* Index; fee waiver; reasonable litigation costs |
| II | ARBA | Privacy Act. 5 U.S.C. § 552a(d)(1) | Same case file, as records pertaining to Plaintiff (the named applicant) | Access order; reasonable litigation costs |
| III | USALSA | FOIA, 5 U.S.C. § 552 | Ten categories of litigation, oversight, and *Touhy*-coordination records (No. FA-26-0002) | Search; production; *Vaughn* Index; fee waiver; reasonable litigation costs |
| IV | USALSA | Privacy Act, 5 | Same records, to the extent | Access order; reasonable |

| | | U.S.C. § 552a(d)(1) | maintained in a system of records and retrievable by personal identifier | litigation costs |
|---|---|---|---|---|
| V | HRC | FOIA, 5 U.S.C. § 552 | Thirteen categories: AMHRR contents, iPERMS audit log, DA Form 2173 (LOD) alteration history, Purple Heart adjudication file, June 20, 2008 engagement award/casualty/roster records, NGR 635-101 transmission records | Search; production; *Vaughn* Index; fee waiver; reasonable litigation costs |
| VI | HRC | Privacy Act, 5 U.S.C. § 552a(d)(1) | Same records, as records pertaining to Plaintiff (the named subject of his AMHRR) | Access order; reasonable litigation costs |
| VII | First Army | FOIA, 5 U.S.C. § 552 | Nine categories: WOFR Board records, challenge memoranda, ex parte communications | Search; production; *Vaughn* Index; fee waiver; reasonable litigation costs |
| VIII | First Army | Privacy Act, 5 U.S.C. § 552a(d)(1) | Same records, to the extent maintained in a Privacy Act system of records | Access order; reasonable litigation costs |
| IX | NGB | FOIA, 5 U.S.C. § 552 | NGB Withdrawal-of-Federal-Recognition and federal-recognition file; NGB Office of Chief Counsel litigation records (Milliard); NGB Office of Information and Privacy FOIA files (Nikolaisen); NGB ABCMR advisory and coordination records; DA Form 2173 (LOD) versions and audit trail (KY-12-01060); BG Lewellen NGB records | Search; production; *Vaughn* Index; in camera review; reasonable litigation costs |
| X | NGB | Privacy Act, 5 U.S.C. § 552a(d)(1) | Same records, to the extent maintained in a Privacy Act system of records | Access order; reasonable litigation costs |

## PARTIES

12. Plaintiff Michael Dean Vaughan is a United States citizen residing at 500 Leo Drive, Hamilton, Ohio 45013, Butler County, within the Southern District of Ohio, Western Division. Plaintiff is a former First Lieutenant, Engineer Corps, KYARNG, who served on active federal duty, including a combat deployment to Afghanistan from 2008 to 2009. He sustained injuries from an RPG strike on June 20, 2008, resulting in PTSD, traumatic brain injury, hearing loss, and visual disturbances that were never processed through the Army's Physical Disability Evaluation System. He is the named applicant in ABCMR

Docket No. AR20120006999, a 100% Permanently and Totally service-connected disabled veteran (a rating the Department of Veterans Affairs assigned effective December 2024), and a requester and named individual within the meaning of 5 U.S.C. § 552(a)(3)(A) and 5 U.S.C. § 552a(d).

13. Defendant Department of Defense (DoD) is the executive department of the United States military establishment and an agency within the meaning of 5 U.S.C. § 552(f)(1), established under 10 U.S.C. § 111. Plaintiff names this Defendant by its legal name under federal law, the Department of Defense. The Department of the Army is a military department within the Department of Defense, and the National Guard Bureau is a joint activity of the Department of Defense under 10 U.S.C. § 10501. Defendant Department of the Army is an executive agency within the meaning of 5 U.S.C. § 552(f)(1). Four subordinate components of the Department of the Army are at issue. The Army Review Boards Agency (ARBA), located at 251 18th Street South, Suite 385, Arlington, Virginia 22202-3531, is the designated FOIA and Privacy Act office for ABCMR records and is responsible for maintaining, searching, and producing the records at issue in Counts I and II. The U.S. Army Legal Services Agency (USALSA), located at 9275 Gunston Road, Suite 4100, Fort Belvoir, Virginia 22060-5546, is responsible for maintaining, searching, and producing the records at issue in Counts III and IV. The U.S. Army Human Resources Command (HRC), located at 1600 Spearhead Division Avenue, Department 420, Fort Knox, Kentucky 40122-5402, is responsible for maintaining the Army Military Human Resource Record (AMHRR) in iPERMS and for searching and producing the records at issue in Counts V and VI. HRC's FOIA and Privacy Act office may be contacted at usarmy.knox.hrc.mbx.foia@army.mil. Headquarters, First United States

Army, located at 1 Rock Island Arsenal, Building 68, Rock Island, Illinois 61299-8100, is responsible for maintaining, searching, and producing the records at issue in Counts VII and VIII. In addition, Plaintiff names as a Defendant the National Guard Bureau (NGB), a joint activity of the Department of Defense established under 10 U.S.C. § 10501 and an agency within the meaning of 5 U.S.C. § 552(f)(1), located at 111 South George Mason Drive, Arlington, Virginia 22204, whose FOIA and Privacy Act office (NGB-IP) may be contacted at ngb.foia@army.mil. NGB is the FOIA and Privacy Act processing authority for records created under the seal of the Chief, National Guard Bureau, and is responsible for maintaining, searching, and producing the records at issue in Counts IX and X. As used in this Complaint, references to *"Defendant"* in connection with Counts I through VIII denote the Department of the Army, and references to *"Defendant"* in connection with Counts IX and X denote the National Guard Bureau; the Department of Defense is named as the executive department of which the Department of the Army and the National Guard Bureau are components and through which the relief sought may be effected. Plaintiff names the Department of Defense, the Department of the Army, and the National Guard Bureau to ensure that the agency or component responsible for each request and Count is properly before the Court; no relief is sought against the Department of Defense independent of its components.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction pursuant to 5 U.S.C. § 552(a)(4)(B) (FOIA), 5 U.S.C. § 552a(g)(1)(B) (Privacy Act), 28 U.S.C. § 1331 (federal question).

15. Venue is proper in the Southern District of Ohio, Western Division. FOIA's venue provision, 5 U.S.C. § 552(a)(4)(B), authorizes a requester to bring suit in the district

where the complainant resides, where the complainant has a principal place of business, where the agency records are situated, or in the District of Columbia. Congress enacted this plaintiff-centric provision to ensure FOIA requesters are not compelled to litigate in forums chosen by the government. Plaintiff resides in Hamilton, Ohio, Butler County, within the Western Division of the Southern District of Ohio. The Privacy Act's venue provision, 5 U.S.C. § 552a(g)(5), likewise permits suit to be brought where the complainant resides. Venue is independently proper under both statutes, 5 U.S.C. § 552(a)(4)(B) and § 552a(g)(5). These plaintiff-centric venue provisions apply with equal force to the National Guard Bureau as to the components of the Department of the Army, and venue is proper as to all Defendants in this District.

16. This action is a federal administrative records dispute, not a tort or civil claim arising from any state. The sole legal question before this Court is whether the Department of the Army has unlawfully withheld agency records from a requester entitled to receive them. Plaintiff's underlying military history and the events explaining why those records matter are not before this Court for adjudication; they are relevant only to establish why no exemption shields the records from production. The records at issue are maintained in federal systems and are producible electronically from any district. The FOIA and Privacy Act violations accrued in the Southern District of Ohio, where Plaintiff resides, submitted his requests, and received the wrongful responses or non-responses now at issue.

## STATUTORY FRAMEWORK

17. The Freedom of Information Act, 5 U.S.C. § 552, requires federal agencies to make records promptly available upon request. 5 U.S.C. § 552(a)(3)(A). Disclosure, not

secrecy, is FOIA's dominant objective, *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976), and its exemptions are "explicitly made exclusive" and must be "narrowly construed," *Milner v. Dep't of the Navy*, 562 U.S. 562, 565 (2011), and given "a narrow compass," *id.* at 571. An agency must determine within twenty business days whether to comply and notify the requester. 5 U.S.C. § 552(a)(6)(A)(i). A lawful *"determination"* within the meaning of the statute requires more than an acknowledgment or a promise to search later: the agency must at least gather and review the responsive documents, determine and communicate the scope of the documents it intends to produce and withhold and the reasons for any withholding, and advise the requester of the right to appeal. *Citizens for Responsibility & Ethics in Wash. v. FEC*, 711 F.3d 180, 186-88 (D.C. Cir. 2013). An agency that merely assigns a tracking number and defers the search to an indefinite future date has not made a determination, and the requester is deemed to have constructively exhausted. Failure to meet the twenty-business-day deadline permits immediate judicial review; exhaustion is deemed constructive. 5 U.S.C. § 552(a)(6)(C)(i). The same twenty-business-day deadline applies to administrative appeals. 5 U.S.C. § 552(a)(6)(A)(ii). No unusual-circumstances extension under § 552(a)(6)(B)(i) is available here because no written notice of extension invoking that subsection, specifying the unusual circumstances, and setting a date certain for completion was provided within the original response period for any of the demands at issue.

18.    The Privacy Act of 1974, 5 U.S.C. § 552a(d)(1), grants individuals the independent right to access all agency records pertaining to themselves maintained in a system of records. An agency that fails to permit access is subject to civil suit in federal district court. 5 U.S.C. § 552a(g)(1)(B).

19. The two statutes operate as a one-way ratchet: records accessible under either must be produced. The operative statutory rule is 5 U.S.C. § 552a(t)(2), which provides that no agency shall rely on any Privacy Act exemption to withhold records otherwise accessible under *FOIA. See also Martin v. Office of Special Counsel*, 819 F.2d 1181, 1184 (D.C. Cir. 1987) (the government must demonstrate that documents fall within some exemption under each Act; if a Privacy Act exemption but not a FOIA exemption applies, records must be released under FOIA). The Privacy Act's withholding provisions, 5 U.S.C. § 552a(d)(5) and subsections (j) and (k), do not incorporate FOIA's deliberative process privilege. The only permissible withholding ground for individual access requests is § 552a(d)(5), which covers only records compiled in reasonable anticipation of a civil action or proceeding. ABCMR board records and USALSA litigation oversight records are maintained in Privacy Act systems of records. See 32 C.F.R. § 581.3(i)(2)(ii). The (j)(2) and (k)(2) law-enforcement exemptions are inapplicable because none of the records at issue were compiled for law enforcement purposes against Plaintiff; they concern the conduct of government officials in federal court and military administrative proceedings.

20. FOIA's 2016 Improvement Act, codified at 5 U.S.C. § 552(a)(8)(A), prohibits withholding unless the agency reasonably foresees that disclosure would harm an interest protected by an exemption or that disclosure is prohibited by law. This foreseeable harm requirement carries special force when applied to withholdings of deliberative processes. *Reporters Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 372 (D.C. Cir. 2021). Boilerplate or generalized assertions of harm do not satisfy the standard; the agency must

offer a focused and concrete demonstration tied to the particular records. *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 370–71 (D.C. Cir. 2020).

21. When an agency withholds responsive documents, it must provide a *Vaughn* Index with sufficient specificity to permit the requester to challenge each withholding. *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973); *Vaughn v. United States*, 936 F.2d 862, 866-67 (6th Cir. 1991) (substance of agency justification controls over form; a *Vaughn* Index is one acceptable method for providing the required detail); *Jones v. FBI*, 41 F.3d 238, 241-42 (6th Cir. 1994); *King v. U.S. Dep't of Justice*, 830 F.2d 210, 217-19 (D.C. Cir. 1987).

22. An agency search must be conducted using methods reasonably expected to uncover all relevant documents. *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983) (agency must conduct *"a search reasonably calculated to uncover all relevant documents"*); *Rugiero v. U.S. Dep't of Justice*, 257 F.3d 534, 547 (6th Cir. 2001). The burden of proof rests entirely on the agency. 5 U.S.C. § 552(a)(4)(B); *DOJ v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989). The Court may examine withheld records in camera. 5 U.S.C. § 552(a)(4)(B); *Rugiero v. U.S. Dep't of Justice*, 257 F.3d 534, 543 (6th Cir. 2001). Plaintiff expressly reserves the right to request in camera review of any withheld documents.

23. Any FOIA Exemption 5, 5 U.S.C. § 552(b)(5), assertion is substantially weakened and subject to particularized in camera review and privilege-by-privilege testing, where: (a) the government-misconduct doctrine applies, because the deliberative process privilege *"disappears altogether when there is any reason to believe government misconduct occurred,"* *In re Sealed Case*, 121 F.3d 729, 746 (D.C. Cir. 1997), and is *"routinely denied"* where documents may shed light on government misconduct, id. at 738; *see also*

*Bank of Dearborn v. Saxon*, 244 F. Supp. 394 (E.D. Mich. 1965), aff'd sub nom. *Bank of Dearborn v. Manufacturers Nat'l Bank*, 377 F.2d 496 (6th Cir. 1967); Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs, 60 F.3d 867 (1st Cir. 1995); (b) the crime-fraud doctrine applies, because communications made in furtherance of fraud lose privilege protection upon the particularized showing required, *Clark v. United States*, 289 U.S. 1, 15 (1933) (*"The privilege takes flight if the relation is abused"*); *United States v. Zolin*, 491 U.S. 554, 572 (1989); or (c) the *Accardi* doctrine applies to records evidencing the agency's violation of its own regulations, which is relevant to whether the requested records document government misconduct, whether Exemption 5 should be tested document by document, and whether the agency can satisfy its foreseeable-harm burden, *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954); *Service v. Dulles*, 354 U.S. 363 (1957). The Sixth Circuit's five-element test for fraud upon the court requires conduct: (1) by an officer of the court; (2) directed to the judicial machinery itself; (3) that is intentionally false, willfully blind to the truth, or in reckless disregard for the truth; (4) that is a positive averment or concealment when one is under a duty to disclose; and (5) that deceives the court. *Demjanjuk v. Petrovsky*, 10 F.3d 338, 348 (6th Cir. 1993).

23.1.  The Army's own implementing regulation independently condemns the processing at issue. Army Regulation 25-55, The Department of the Army Freedom of Information Act Program (19 October 2020), provides: that interim responses, negotiations concerning the scope of a request, and fee communications *"do not constitute a final response determination pursuant to FOIA"* (paragraph 1-12(b)); that in unusual circumstances an activity may extend its response time by written notice *"not to exceed 10 additional working days,"* beyond which the requester *"still retains the right to treat this delay as a*

*de facto denial with full administrative remedies"* (paragraph 5-12); that a "no records" response must rest on a detailed certificate, signed by the records custodian, stating *"at a minimum, what areas or offices were searched, and how the search was conducted (manually, by computer, searched terms used, and so on)"* (paragraph 5-8(a)); that Army activities are *"required to make reasonable efforts to conduct electronic searches for responsive documents"* (paragraph 3-5(b)); that only a designated Initial Denial Authority, the Secretary of the Army, or a delegate expressly acting for a named IDA may deny a request, and only after a servicing judge advocate's legal review (paragraph 5-7); and that an IDA receiving an appeal must forward it to the Office of the General Counsel with a complete file, including any "no records" certificates and legal opinions, with final determinations on appeals made *"normally"* *"within 20 working days after receipt"* (paragraphs 5-15(b), 5-15(d)). Under the *Accardi* doctrine cited in paragraph 23 above, Defendant was bound to follow each of these provisions. As alleged in Counts III and IV, the June 8, 2026 determination and the processing of Plaintiff's appeals complied with none of them.

24. Sequencing of grounds; scope of third-party information sought. As to each Count below, Plaintiff's Privacy Act first-party right of access under 5 U.S.C. § 552a(d)(1) is the primary and independent basis for production of records concerning Plaintiff, and the deliberative-process privilege is categorically unavailable against that first-party access right. The crime-fraud and government-misconduct doctrines are pleaded in the alternative and apply to any record not otherwise reached by first-party access. As to FOIA Exemptions 6 and 7(C): Plaintiff does not seek third-party information for its own sake or to vindicate a private interest. Plaintiff seeks the identities and official acts of

government personnel acting in their official capacities, including the officers and attorneys whose documented conduct is at issue, as to whom any privacy interest in their official conduct is diminished and is outweighed by the public interest in disclosing how the agency conducted itself. Where a requester seeks records to show government impropriety, the requester must produce evidence that would warrant a belief by a reasonable person that the alleged impropriety might have occurred, *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004); the contemporaneous documentary record set out in this Complaint and the accompanying Statement satisfies that standard many times over. Plaintiff separately seeks third-party information only insofar as it is intertwined with, and necessary to render intelligible, Plaintiff's own first-party records. Plaintiff does not contest narrowly tailored redaction of purely private third-party identifiers bearing no nexus to official conduct.

24.1. Scope of Privacy Act access sought; reservation under 5 U.S.C. § 552a(d)(5). Plaintiff's Privacy Act first-party access claims (Counts II, IV, VI, VIII, and X) are directed to records maintained in a system of records and retrieved by Plaintiff's name or personal identifier, principally his Army Military Human Resource Record and iPERMS audit history, his Line of Duty case file, his Withdrawal of Federal Recognition file, and his ABCMR case file. Plaintiff does not seek, under the Privacy Act, access to any material compiled in reasonable anticipation of a civil action or proceeding within the meaning of 5 U.S.C. § 552a(d)(5). To the extent any responsive litigation-anticipation material exists, including any Office of the Chief Counsel litigation file, Plaintiff seeks that material under FOIA, 5 U.S.C. § 552, where any Exemption 5 assertion is subject to the

particularized in camera review and the crime-fraud and government-misconduct testing described in this Complaint.

25. The record establishes at least five discrete instances satisfying all five *Demjanjuk* elements, each independently sufficient to require, at minimum, particularized in camera review and privilege-by-privilege testing of any Exemption 5 assertion as to records generated in connection with the conduct.

26. The five discrete instances, Seitz's September 9, 2010, Motion to Quash (*Vaughan v. Brigham*, 3:10-cv-00005-DCR); the fabricated Hirte Affidavit filed June 24–28, 2011 (id.); Milliard's August 3, 2012, Motion to Dismiss (Vaughan v. Kentucky Army National Guard, 3:12-cv-00035-DCR); the Barry July 24, 2012, Declaration (id.); and the March 23, 2012, Westfall scope-of-employment certification and substitution (Vaughan v. Hayes, 3:10-cv-00054-DCR), are developed factually in the accompanying Statement of Particularized Factual Basis (the *"Statement"*), submitted in support of this Complaint only for the limited FOIA and Privacy Act purposes identified in Paragraph 3 above: identifying likely custodians and search locations, establishing the public-interest basis for Plaintiff's fee-waiver request, supporting particularized review of any Exemption 5 assertion, and addressing foreseeable harm under 5 U.S.C. § 552(a)(8)(A); the Statement is not submitted as a request for merits adjudication, vacatur, reversal, modification, or collateral review of any prior judicial, military, administrative, or state-court determination. Each is supported by contemporaneous documentary evidence already in the federal-court and military-administrative record, including the 2014 court-supervised criminal-discovery production in *Commonwealth v. Vaughan*, 14-CR-00204, and the January 2026 Thurston County FOIA production, Reference No. S039468-011326. The

applicable *Sixth Circuit standard is the five-element test stated in Demjanjuk v. Petrovsky*, 10 F.3d 338, 348 (6th Cir. 1993); the timeliness of these grounds, and the reservation of any limitations question to the proper forum, is addressed in the Statement.

27. Plaintiff identified all five *Demjanjuk* elements in his contemporaneous Motion for Sanctions against Seitz (Docket No. 43, filed September 27, 2010), invoking *Demjanjuk* by name and requesting $25,000 in sanctions under Fed. R. Civ. P. 11. At that time, Plaintiff was unable to prove the full scope of the fraud because he did not have the thousands of emails and documents LTC Seitz subsequently turned over to the Commonwealth of Kentucky in 2014, which Plaintiff received through court-supervised criminal discovery. That Motion for Sanctions was thereafter admitted at the 1st Withdrawal of Federal Recognition Board on July 9, 2011, and is therefore part of the ABCMR case file that ARBA withheld in response to Plaintiff's July 5, 2025, FOIA and Privacy Act request.

27.1. The uniform non-response is itself probative. Five separate components, ARBA, USALSA, HRC, First Army, and NGB, have produced essentially nothing across every request at issue, without asserting a single exemption or producing a single *Vaughn* Index entry. Each component's responsive file contains a different link of the same documented chain: ARBA holds the board file containing the fabricated Hirte affidavit and the stripped AR 15-6; USALSA holds the litigation-oversight records of the unauthorized Motion to Quash and its known misrepresentations; HRC holds the iPERMS audit log that will fix the deletion-reinsertion cycle and the Line of Duty alteration by date, time, and actor; First Army holds the board packet built on the falsified exhibits, the unanswered challenge memoranda, and the ex parte communications; and NGB holds the

litigation and FOIA files of the very counsel who authored the Government's dispositive motion and directed that there be no communication with Plaintiff on his FOIA requests. The most plausible explanation for five components' simultaneous silence is the content of the records themselves, and an agency's institutional interest in not confirming its own documented misconduct is the inverse of a cognizable foreseeable harm under 5 U.S.C. § 552(a)(8)(A). This is precisely the circumstance for which Congress enacted the foreseeable-harm standard and for which in camera review under 5 U.S.C. § 552(a)(4)(B) exists. Nor is the silence a first occurrence: the record documents an established agency practice of subordinating Plaintiff's records-access rights to litigation strategy, the March 5, 2012 NGB standing order of *"NO communication"* with Plaintiff on his FOIA requests *"unless Mr. Milliard advises"*; counsel's June 28, 2012 weighing of the FOIA release of the WOFR hearing tapes against the Government's litigation posture; and the July 25, 2013 denial, scripted by LTC Seitz, of Plaintiff's request for his own examination records during a pending congressional inquiry.

## FACTUAL ALLEGATIONS

### A. Background: Plaintiff's Military Service and the Wrongful Separation

28. Plaintiff served as a commissioned officer in the KYARNG from 2004 through 2013, attaining the rank of First Lieutenant, Engineer Corps.

29. Plaintiff deployed to Afghanistan in support of Operation Enduring Freedom from approximately 2008 to 2009, sustaining blast overpressure injuries from an RPG strike on June 20, 2008, including transient vision loss, mTBI, and acoustic trauma, the permanent residuals of which were confirmed by a National Guard Bureau-approved Line of Duty determination. A National Guard Bureau-approved Line of Duty investigation and VA

disability rating decisions documented the resulting PTSD, traumatic brain injury, hearing loss, and visual disturbances. Plaintiff is currently rated at 100% Permanent and Total disability by the Department of Veterans Affairs.

30.     Rather than processing Plaintiff through the Army's Physical Disability Evaluation System as required by AR 635-40 and 10 U.S.C. § 1177, the KYARNG separated Plaintiff with an Other Than Honorable characterization on July 16, 2013. Six mandatory triggers requiring Medical Evaluation Board referral were present and deliberately ignored.

31.     In 2012, Plaintiff filed an application with the Army Board for Correction of Military Records, assigned Docket No. AR20120006999. The Board convened on May 9, 2013, and issued a denial on May 13, 2013. Plaintiff continues to pursue correction of his military records and intends to file a new petition in the near future, accompanied by the records sought in this Complaint.

**B. FOIA Proceeding No. 1 (ARBA): Counts I and II**

32.     On July 5, 2025, Plaintiff submitted a formal FOIA and Privacy Act request to the ARBA FOIA Officer via certified mail, invoking both 5 U.S.C. § 552 and 5 U.S.C. § 552a(d)(1), and seeking five specifically identified categories of records for ABCMR Docket No. AR20120006999: (a) non-redacted copies of all documents Plaintiff submitted to the ABCMR in their original form; (b) all records, exhibits, and materials the ABCMR received from any other agency, command, or office; (c) all internal memoranda, staff summaries, recommendations, legal reviews, or notes used by ABCMR staff or Board members; (d) the complete final decision memorandum including all Board findings,

conclusions, and rationale; and (e) all correspondence between the ABCMR and any other Army or DoD entity regarding this case.

33. Plaintiff's request explicitly demanded a detailed *Vaughn* Index for any materials withheld, citing *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), with the specific exemption and foreseeable harm identified document by document.

34. The twenty-business-day deadline lapsed without a lawful determination. ARBA ultimately produced only two documents: the May 13, 2013, denial letter and the 14-page Record of Proceedings, both already in Plaintiff's possession and constituting only the publicly issued final decision. No *Vaughn* Index was provided. No exemptions were cited. No explanation was offered for the failure to produce materials in Categories (a), (b), (c), and (e). Category (d) production was likewise incomplete. The 2013 Record of Proceedings itself confirms that the Board received and considered numerous documents Plaintiff submitted, records from the NGB and KYARNG, and records from the Officer Special Review Board, none of which were produced. ARBA's position is untenable: an agency cannot discharge a five-category FOIA request by producing two documents the requester already possesses and calling it a day.

35. On February 25, 2026, Plaintiff mailed a comprehensive administrative appeal via certified mail to the FOIA and Privacy Act Appeals Officer, ARBA, at 251 18th Street South, Suite 385, Arlington, Virginia 22202-3531. That appeal was delivered to ARBA on March 9, 2026 (USPS Certified Mail Tracking No. 9589 0710 5270 3358 2897 11). The twenty-business-day appeal response deadline, measured from March 9, 2026, expired on April 6, 2026, without any determination, acknowledgment, or production. Plaintiff has constructively exhausted all administrative remedies as to *Counts I and II*.

*Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 64-65 (D.C. Cir. 1990). As of the filing date of this Complaint, June 15, 2026, seventy calendar days have elapsed since the appeal deadline expired with no response.

## C. FOIA Proceeding No. 2 (USALSA): Counts III and IV

### 1. The Original FOIA Request and Its Factual Basis

36. On February 19, 2026, Plaintiff submitted a FOIA request to USALSA by certified mail, delivered February 24, 2026, at 8:05 a.m. at the Fort Belvoir, Virginia post office (USPS Tracking No. 9589 0710 5270 3358 2894 83). The request invoked 5 U.S.C. § 552 and sought records of LTC Seitz's documented misconduct, all established by documentary evidence produced through court-supervised criminal discovery in *Commonwealth v. Vaughan*, Case No. 14-CR-204, Kenton Circuit Court, in which the Commonwealth's Attorney produced the KYARNG's complete Outlook PST email archive and scanned military records on June 18, 2014. The chain of custody for that production is established by the Commonwealth's Supplemental Response identifying a CD of Scanned Military Records and a DVD of the Outlook PST File, and by the January 6, 2014, records request from Commonwealth's Attorney Rob Sanders to LTC Seitz, confirming that every email and military record cited below was obtained through a court-supervised production authenticated by the office of the Commonwealth's Attorney. That production was made under Kentucky Rules of Criminal Procedure 7.24 and 7.26, including material the Commonwealth deemed *"discoverable due to its exculpatory nature"* (Exhibit 27); the responsive records thus reached Plaintiff lawfully through the criminal-discovery process from the government's own records custodian.

37. The records sought from USALSA were generated in furtherance of, or in direct institutional response to, the conduct described below. The items in the subparagraphs below are pleaded solely to support the foreseeable-harm, fee-waiver, and Exemption 5 analyses identified in paragraphs 3 and 10 above; the underlying matters are not pleaded as causes of action in this Complaint. Each item is established by contemporaneous documentary evidence authenticated through court-supervised criminal discovery in *Commonwealth v. Vaughan*, Case No. 14-CR-00204, Kenton Circuit Court (June 18, 2014), and the January 2026 Thurston County FOIA production (Reference No. S039468-011326).

37.1. Unauthorized federal-court appearance. On June 8, 2010, LTC Michael Roden of USALSA's General Litigation Branch directed LTC Dylan F. Seitz in writing that *"the U.S. Attorney's office is the entity authorized to represent the government's interests in court."* Seitz nonetheless filed a Motion to Quash in *Vaughan v. Brigham*, 3:10-cv-00005-DCR (E.D. Ky.) (Doc. 35), under his own signature on September 9, 2010, in violation of 28 U.S.C. § 516 and 32 C.F.R. Parts 97 and 516. AUSA David E. Middleton's voicemail to Seitz at 8:36 a.m. on September 27, 2010, the morning before oral argument, requesting a copy of the filing and questioning *"whether the Department of Justice really should have made the motion to quash in the first place"* confirms DOJ had not authorized the filing. On June 14, 2010, three months before the Motion to Quash, Seitz separately transmitted Plaintiff's sworn statement and AR 15-6 investigation materials directly to Detective Michael Hirte of the Thurston County Sheriff's Office, without DOJ authorization and in violation of the Privacy Act, 5 U.S.C. § 552a, AR 340-21, and 32 C.F.R. § 516.4(f). Two contemporaneous records establish that the Motion's

representation of an open criminal investigation the Guard *"has been working with"* was known to be false when made. First, on June 15, 2010, Seitz wrote to MAJ Lewellen that he was *"working with the Sheriff's Office in Washington to provide them with enough evidence to indict"*, an admission that no active prosecution existed and that he was attempting to create one, three months before he represented to the court that one already did. Second, the Thurston County Sheriff's Office confirmed on September 15, 2010, six days after the motion was filed, that Plaintiff's records request was *"the only one we have received"*; no Kentucky National Guard request or contact appears anywhere in the agency's file, and the case had been suspended since December 31, 2009, with no suspect identified. Seitz's first documented contact with Detective Hirte occurred June 14, 2010, after the complaining party supplied Hirte's contact information on June 8, 2010, and after Plaintiff's court-authorized subpoenas (March 26–27, 2010) and noticed depositions of COL Hayes and MAJ Richmond (June 9 and 11, 2010), the discovery the Motion to Quash was filed to defeat.

37.2. Fabricated affidavit. On June 24, 2011, MAJ Natalie L. Lewellen, KYARNG attorney-advisor, transmitted a pre-drafted affidavit to Detective Michael Hirte of the Thurston County Sheriff's Office for signature. The affidavit (Doc. 68) contained a critical reopening date altered between Lewellen's draft and Hirte's executed version and falsely represented an active criminal investigation against Plaintiff.

37.3. False-narrative coordination in federal court. On August 3, 2012, NGB-OCC attorney Todd Milliard drafted, and AUSA Middleton filed and signed, a Motion to Dismiss in Vaughan v. Kentucky Army National Guard, 3:12-cv-00035-DCR, representing to the court that the Letter of Reprimand and Referred Officer Evaluation Report were *"in no*

*way related to the AR 15-6 Investigation.*" Contemporaneous Army emails establish the opposite: LTC Seitz's January 29, 2010 *"Slow Death Option"* email proposed the LOR and Referred OER expressly as derivatives of the AR 15-6 investigation, and LTC Jerry L. Morrison's February 16, 2010 Recommended Adverse Action memorandum to COL Wayne L. Burd identified the AR 15-6 investigation by name as the basis for the contemplated adverse action. The same Milliard wrote to Seitz on July 20, 2012, two weeks before filing the Motion to Dismiss, that he *"can't get around this paragraph out of the OER reg, AR 623-105,"* and that if pre-OER AR 15-6 referral to Plaintiff could not be documented *"then I think we're hosed on the APA argument regarding the OER because he'll have final agency action and a violation of agency policy that caused him harm."* No such documentation existed, and the Motion to Dismiss was filed nonetheless.

37.4. Contradictory sworn declaration. Marian J. Barry, Chief, iPERMS Section, Army National Guard Readiness Center (National Guard Bureau), executed a sworn declaration on July 24, 2012, filed in support of the Motion to Dismiss, attesting at paragraph 3(c) that the Letter of Reprimand *"was filed behind the DA 67-9, Relief for Cause on 2010-05-26 in 1LT Vaughan's OMPF"* and remained filed there, the opposite of the Motion to Dismiss's own representation (¶ 37.3 above) that the Letter of Reprimand was never placed in Plaintiff's OMPF. Barry's review was conducted July 19, 2012; the iPERMS audit log and the automated notification transmitted to Plaintiff on July 25, 2012, record that the Letter of Reprimand and Referred OER were re-added to the AMHRR on July 24, 2012, at 13:19, the same day she executed the declaration, following a deletion after the December 16, 2011 iPERMS capture, a deletion-and-re-insertion cycle contemporaneous with the litigation.

37.5. Procured Westfall certification. On March 23, 2012, the U.S. Attorney signed a scope-of-employment certification under 28 U.S.C. § 2679(d)(1) in Vaughan v. Hayes, 3:10-cv-00054-DCR (Doc. 18-1), on the basis of a one-sided Litigation Report prepared by Seitz that omitted Plaintiff's R.A.M. civilian status at the time of the underlying incident and concealed the irreconcilable nature of COL Rodney G. Hayes's prior sworn statements on the scope question. The certification triggered substitution of the United States and FTCA-based dismissal of Plaintiff's claims.

37.6. Sanitization of the AR 15-6 Report of Investigation. The April 6, 2010, Letter of Reprimand and the April 9, 2010, Relief-for-Cause Officer Evaluation Report were each sanitized of all references to the AR 15-6 investigation. The DA Form 1574 page 4 transmitted in the case file omitted LTC Morrison's *"Do NOT Concur"* annotation expressly rejecting the investigating officer's guilt finding. The omissions concealed three independent and parallel pre-action referral failures: AR 15-6 paragraph 1-9(c) (requiring the command to provide the soldier with written notice of the proposed adverse action and a copy of the findings, recommendations, and supporting evidence before adverse action issues); AR 623-3 paragraph 3-58(c), formerly AR 623-105 paragraph 3-50(b) (requiring AR 15-6 referral procedures to be satisfied *"before the act of initiating or directing"* a Relief-for-Cause Officer Evaluation Report, *"irrespective of the fact that the resultant report must also be referred to the rated officer"*); and AR 600-37 paragraph 3-6 (requiring any Letter of Reprimand referral package to include the investigation or report serving as the LOR's evidentiary predicate). The Army Board for Correction of Military Records's own May 13, 2013, Record of Proceedings in Docket No. AR20120006999 found, at paragraph 21, that *"the AR 15-6 investigation is not filed*

*in the applicant's AMHRR "*, a finding internally contradicting the Board's reliance at paragraph 4 of the same record on the AR 15-6 paragraph 1-9(d) exception, which presupposes the investigation's presence in the official record.

37.7. False statement to a United States Senator. On August 29, 2013, LTC Seitz drafted and transmitted to the Office of U.S. Senator Rand Paul an official KYARNG response stating that *"the Kentucky National Guard has no evidence supporting Michael Dean Vaughan's claim that he was injured while serving in a Title 10 status."* That statement issued one day after LTC Seitz, on August 28, 2013, solicited from MAJ Frodge an account supporting the Line of Duty; MAJ Frodge replied the same day that *"I was in the truck he was riding in and can assure you there was no RPG hit,"* an assertion contradicted by the contemporaneous Task Force Workhorse After-Action Review briefed by MAJ Frodge's own company, which records that the A26 turret was struck by an RPG injuring the gunner. LTC Seitz's solicitation framed the inquiry around the incorrect incident date of June 2, 2008 (rendered *"20080602"*), rather than the documented date of June 20, 2008, and the *"no record ... for that day"* review on which the congressional response relied was keyed to that incorrect date. At the date of transmission, the KYARNG record contained, and Seitz had personally received, the Department of Veterans Affairs service-connection award (February 19, 2010) for traumatic brain injury and tinnitus from the June 20, 2008, RPG strike in Afghanistan, the NGB-approved Line of Duty determination (January 7, 2013), the physician-signed DA Form 2173 (March 2, 2009), and the Purple Heart eligibility documentation forwarded to Seitz by COL Michael P. Gavin on March 11, 2013. Following that false statement, in December 2013, Seitz spent two hours with reporters from the Cincinnati Enquirer and

Fox19 repeating the same *"no Title 10 evidence"* narrative to the media; by email dated December 27, 2013, the Adjutant General of Kentucky, MG Edward W. Tonini, personally commended Seitz and KYARNG Public Affairs Officer LTC Hilbrecht for that media campaign. On December 19, 2013, MAJ William Burdett of the NGB Inspector General's Assistance Division opened a formal NGB-IG investigation into the August 2013 congressional response; LTC Scott C. Thomas, the KYARNG Assistant Chief of Staff, directed that all NGB-IG communications be routed through the same JAG office, through Seitz, the subject of the inquiry.

37.8. False criminal representations to the National Guard Bureau to expedite the separation; obstruction of the congressional inquiry; the predicted collapse. On July 3, 2013, LTC Seitz wrote to NGB-JA (LTC Erin McMahon) to expedite the Chief, National Guard Bureau's signature on the withdrawal action, asking that the deputy sign while the Chief was away so that separation papers could be served at Plaintiff's July 13, 2013 drill and an anticipated lawsuit would become *"moot"*, representing that Plaintiff was *"currently the primary suspect in a murder case and is the primary suspect i[n] two attempted murder cases"* and that *"[t]here is an open criminal investigation on him in the state of Washington for stalking and other cyber crimes."* Each criminal representation was false or unsupported when made: the Thurston County case had been suspended since December 31, 2009, with no suspect, and Detective Hirte's own March 27, 2012 supplemental report had re-recommended suspension, the third forum (after the federal court in 2010 and the WOFR board in 2011) to receive the same fabricated *"open investigation"* representation; and Plaintiff had not been charged with murder or attempted murder in any jurisdiction. The only attempted-murder charges in the record

arose from the December 21–22, 2013 episode, six months later, five months after the separation, and weeks after the agency told a United States Senator there was *"no evidence"* of Title 10 injury, an episode a VA psychologist's November 22, 2017 medical opinion determined was *"at least as likely as not (50% or greater probability) proximately due to or caused by service-connected PTSD,"* describing *"a single, severe flashback episode"* with dissociative processes. Seitz's contemporaneous cover email to MAJ Frodge read: *"CLOSE HOLD. We are closing in on the day of celebration."* And seventeen months earlier, on February 9, 2012, Seitz had predicted the outcome in writing: *"he's crazy, and at some point (once he has lost everything), he will probably become dangerous. But we are going to have to let this fish run a bit before we get him to the boat."* During the pendency of the Senator's inquiry, Seitz also scripted the State Surgeon's July 25, 2013 denial of Plaintiff's request for his own examination file and the Hunsaker report, records Plaintiff stated he needed *"to give to a congressman"*, with COL Gavin's response to Plaintiff reproducing Seitz's draft language nearly verbatim. The July 3, 2013 email and the underlying NGB-JA file are within the National Guard Bureau's custody and are squarely responsive to Counts IX and X; the records reflecting these representations, their falsity, and their role in the expedited separation are responsive across Counts V through X and independently defeat any foreseeable-harm showing as to them.

37.9.   Ghost-authorship and sanitization of the Letter of Reprimand. On March 24, 2010, LTC Seitz drafted and transmitted a proposed Letter of Reprimand to COL Burd; the LOR that issued under COL Burd's name on April 6, 2010, incorporates Seitz's drafted text, including the filing-disposition language Seitz dictated to Burd verbatim by email on

March 29, 2010. The signed LOR was sanitized of any reference to the AR 15-6 investigation that was its evidentiary predicate: it recites the allegations against Plaintiff but nowhere identifies, cites, or attaches the AR 15-6 Report of Investigation from which those allegations were drawn, as further described at ¶ 37.6 above. Because Seitz both drafted the LOR and held the referral obligation, that omission was not inadvertent. The command's own contemporaneous records confirm that the LOR's allegations were drawn from the AR 15-6 investigation, including LTC Seitz's January 29, 2010 *"Slow Death Option"* email and LTC Morrison's February 16, 2010 Recommended Adverse Action memorandum, both set forth at ¶ 37.3 above. The representation that the OER and LOR were *"in no way related to the AR 15-6 Investigation"* does not appear in the LOR itself; that representation was advanced to the United States District Court in the Government's August 3, 2012 Motion to Dismiss in Vaughan v. Kentucky Army National Guard, 3:12-cv-00035-DCR, as set forth at ¶ 37.3 above. The institutional records reflecting the drafting, coordination, and sanitization of the LOR are themselves responsive records under FOIA.

37.10. Inspector General capture. On April 13, 2010, COL David R. Alexander, KYARNG Inspector General, transmitted to Plaintiff a written finding stating there is *"NO provision to 'rebut' an AR 15-6 or a Letter of Reprimand,"* closed Plaintiff's inquiry on that basis on May 3, 2010, in IGAR No. 10-0062, and contemporaneously requested from the underlying officials the same regulatory evidence that would have demonstrated the falsity of his ruling. The closure represented to Plaintiff that no rebuttal right existed, when AR 15-6 paragraph 1-9(c), AR 600-20 paragraph 2-17(b), AR 623-3 paragraph 3-58(c), and AR 600-37 paragraph 3-6 each independently required referral with rebuttal

opportunity. When Plaintiff invoked his rebuttal right under AR 15-6 paragraph 1-9(c) by formal request transmitted at 9:36 a.m. on February 26, 2010, Seitz emailed LTC Morrison, COL Burd, MAJ Frodge, and LTC Gensley within twenty-four minutes: *"Gentlemen, I've got this one."*

37.11.  Institutional coordination. From 2009 through 2013, the foregoing conduct was the subject of institutional communications among USALSA, the NGB Office of Chief Counsel, the KYARNG Office of the Staff Judge Advocate, the U.S. Attorney's Office for the Eastern District of Kentucky, the Human Resources Command, the Army Review Boards Agency, and the First U.S. Army, the existence and content of which are themselves responsive records under FOIA. The AR 27-26 professional-responsibility issues arising from the foregoing conduct are the subject of a separately pending referral before the Army Office of General Counsel; that proceeding is not joined in this FOIA action.

37.12.  Withdrawal of Federal Recognition Board conduct. LTC Seitz served as the Recorder at the July 9, 2011, First Withdrawal of Federal Recognition Board, the same proceeding in which the fabricated Hirte affidavit was admitted as Government Exhibit 5 and the September 28, 2010, Motion to Quash ruling, obtained on the unauthorized filing described at ¶ 37.1 above, was presented as Government Exhibit 6. In his recorded opening statement Seitz instructed the board that *"First Army has already decided that the investigation was legally sufficient,"* and during deliberations he directed the board that *"First Army has made the determination. He did these acts."* The official summarized transcript transmitted to First Army for the General Officer Show Cause review under NGR 635-101 paragraph 6(a)(3) omitted those instructions.

37.13. Unauthorized access to medical records. The State Surgeon, COL Michael P. Gavin, obtained Plaintiff's Department of Veterans Affairs Compensation and Pension examination records through the Armed Forces Health Longitudinal Technology Application (AHLTA) without Plaintiff's authorization, consent, or any documented clinical or administrative basis, admitting in his own report, *"I have obtained through the ALHTA system results of VA Compensation and Pension examinations performed on 10 DEC 2012, and on 28 NOV 2012"*, and on March 12, 2013, the Deputy State Surgeon, CPT Stephanie K. Fields, disseminated the contents of those VA examinations to non-clinical command and legal personnel, including MAJ Frodge, COL Jones, LTC Gardner, and LTC Seitz, Plaintiff's litigation adversary, each act in violation of the Privacy Act, 5 U.S.C. § 552a, in connection with the Withdrawal of Federal Recognition proceedings and the contemporaneous denial of Medical Evaluation Board processing.

37.14. Off-docket ghost-drafting of the federal filings and the disputed AR 15-6 legal review by a senior Judge Advocate. After LTC Seitz filed the Motion to Quash and the Clerk of the U.S. District Court advised him that pleadings had to be filed electronically and that any exemption required a motion, a Judge Advocate officer senior to LTC Seitz, who signed as *"COL S"* and used the personal email accounts jsawy10578@aol.com and jsawy10578@aim.com, and whom Plaintiff has identified as Colonel James M. Sawyers, Judge Advocate General's Corps, prepared the responsive federal-court filings for LTC Seitz's signature. On September 14, 2010, in emails to LTC Seitz's Army account, COL Sawyers wrote, *"Attached is the legal review for the 15-6 and the action memo. We can print and execute tomorrow. The motion for exemption will follow shortly,"* and, later the same day, *"Attached is your draft exemption motion for your review and edit along with*

*a proposed order.*" The attachments were the United States Army's Motion to be Exempted from Electronic Filing and a proposed order for the Court's signature; the motion, drafted for LTC Seitz's signature, sought leave for the Army to file its pleadings in hard copy by regular mail rather than on the Court's electronic docket, on the asserted ground that installation email was *"restricted... as a matter of national security."* Two facts of direct FOIA significance follow. First, COL Sawyers' September 14, 2010 email states that he prepared *"the legal review for the 15-6"*, the legal-sufficiency review that First Army later represented it does not possess and that Plaintiff has repeatedly sought; the email is documentary evidence that such a review was created, outside ordinary channels. Second, the senior reviewing attorney conducted this official legal work through personal, non-governmental email accounts, which both implicates federal-records and Privacy Act obligations and supplies a concrete, non-speculative reason that searches limited to official systems may report *"no records."* Plaintiff does not, on the present record, assert COL Sawyers' specific duty assignment or command as of September 2010; identifying his organization, supervisory chain, and the official basis (if any) for his participation is among the matters the requested records will establish. (Re: Brief & Letterhead (UNCLASSIFIED), September 14, 2010, with attachments Motion_to_exempt.docx and order.docx.)

37.15. Statutorily disqualified evaluator. The Withdrawal of Federal Recognition relied upon a mental-health evaluation conducted by Floyd Hunsaker, who held only a Kentucky Marriage and Family Therapist license (issued 1995, expired December 27, 2019). Under 10 U.S.C. § 1177, the mandatory pre-separation evaluation of a service member diagnosed with post-traumatic stress disorder or traumatic brain injury must be conducted

Page 35 of 96

by *"a clinical psychologist, psychiatrist, licensed clinical social worker, or psychiatric advanced practice registered nurse."* Hunsaker held none of the four credentials Congress prescribed.

37.16. Records subject to FOIA. The records sought in this action include all institutional documents reflecting awareness of, response to, or communication concerning each item set forth in ¶¶ 37.1 through 37.15 above, the existence and content of which are themselves responsive records under FOIA.

38. The original FOIA request sought the following ten specifically identified categories of records, all within the period January 2010 through December 2013 unless otherwise noted:

39. All correspondence, emails, memoranda, and directives between USALSA personnel, including LTC Sam Morris, LTC Michael Roden, and LTC Michael Mierau, and LTC Dylan Seitz regarding: (a) *Vaughan v. Brigham*, Case No. 3:10-cv-00005-DCR (E.D. Ky.); (b) any Motion to Quash filed by Seitz in connection with subpoenas issued in those proceedings; (c) compliance or non-compliance with *Touhy* regulations at 32 C.F.R. Parts 97 and 516, Subpart G; and (d) any directive, instruction, or guidance regarding routing of litigation matters through the U.S. Attorney's Office.

40. All correspondence between USALSA and the U.S. Attorney's Office for the Eastern District of Kentucky, including AUSA David Middleton, regarding Seitz's participation in the above-captioned cases, including any notifications, complaints, referrals, or expressions of concern regarding unauthorized filings or unauthorized court appearances. The existence of such records is established by direct documentary evidence: on June 26, 2011, AUSA Middleton sent LTC Seitz and MAJ Lewellen a written email directing

them to procure a notarized affidavit from Washington State witnesses for use at the June 28, 2011, federal court hearing; those communications necessarily generated responsive records within USALSA's own litigation files and correspondence systems.

41. All correspondence between USALSA and the NGB Office of Chief Counsel, including Maximino Gonzalez, Jr., Charles L. Young III, and MAJ Daniel S. Zevitz, regarding Seitz's handling of the above-captioned cases, including discussions of *Touhy* compliance, witness funding, or the propriety of Seitz's actions.

42. Any USALSA case files, intake records, legal assistance referral records, tracking documents, or litigation management records related to the above-captioned cases, including any legal sufficiency reviews, opinions, or memoranda regarding the authorization of Seitz's actions.

43. Any records reflecting USALSA's awareness of or response to the Motion to Quash filed by Seitz on Commonwealth of Kentucky letterhead, including any post-filing review, corrective action, or referral for investigation; any records reflecting USALSA's awareness of the court's ECF violation notice (Docket No. 37); and any records reflecting USALSA's awareness of Seitz's sworn admissions in the Motion to be Exempted from Electronic Filing Requirements (Docket No. 38).

44. Any records reflecting USALSA's awareness of or response to Seitz's inclusion of the *"Fraud Upon the Court"* section in his Motion to Quash, including any review of whether such advocacy exceeded the scope of *Touhy* authority or constituted unauthorized representation of a non-party's interests.

45. Any records reflecting USALSA's knowledge of, response to, or failure to act upon the material misrepresentation in the Motion to Quash regarding the status of Thurston

County Sheriff's Office Case No. 09-5046, which Seitz falsely represented to the federal court as an open investigation when the case had been suspended since December 31, 2009.

46. Any records reflecting USALSA's awareness of or response to Seitz's disclosure of AR 15-6 investigation materials, including a service member's sworn statement, to civilian law enforcement at the Thurston County Sheriff's Office, including any Privacy Act compliance review or determination regarding the propriety of such disclosure.

47. Any records reflecting USALSA's awareness of or response to the KYARNG's expenditure of government funds to transport a civilian non-party witness from Washington State to Kentucky for a hearing on the unauthorized Motion to Quash, after USALSA had confirmed that no Army funding mechanism existed for such purpose.

48. Any records reflecting communications between USALSA and any component of the Army Inspector General, the Army Ethics Office, or the Judge Advocate General's Corps Professional Responsibility Program regarding LTC Seitz's conduct in the above-captioned matters.

## 2. The Supplemental Privacy Act Letter

49. On March 2, 2026, Plaintiff filed a supplemental Privacy Act letter with USALSA via U.S. Certified Mail, Return Receipt Requested, delivered on March 5, 2026, at 8:32 a.m. at the Fort Belvoir, Virginia post office (USPS Tracking No. 9589 0710 5270 3358 2897 35). The supplemental letter formally invoked Plaintiff's independent access rights under 5 U.S.C. § 552a(d)(1) as a supplement to the original FOIA request. It explicitly stated that it did not restart the FOIA statutory response clock and incorporated all ten categories of records identified in the original request. The supplemental letter also

placed USALSA on formal notice that: (a) the deliberative process privilege is categorically unavailable under the Privacy Act; (b) the exemptions at 5 U.S.C. § 552a(j)(2) and (k)(2) are inapplicable because the records were not compiled for law enforcement purposes against the requester; (c) the records must be produced under both FOIA and the Privacy Act by operation of 5 U.S.C. § 552a(t)(2) and *Martin v. Office of Special Counsel*, 819 F.2d 1181, 1184 (D.C. Cir. 1987); and (d) any denial must be accompanied by a document-specific *Vaughn* Index and segregated production of all non-exempt portions under *Church of Scientology v. U.S. Dep't of Army*, 611 F.2d 738 (9th Cir. 1979).

50.   Plaintiff is the named individual within the meaning of 5 U.S.C. § 552a(d)(1) as to all responsive USALSA records that are maintained in a Privacy Act system of records and retrievable by Plaintiff's name, Social Security number, case name, case number, docket number, or other personal identifier. *Vaughan v. Brigham*, Case No. 3:10-cv-00005-DCR, was Plaintiff's own civil lawsuit. Seitz's unauthorized pleadings targeted Plaintiff, and the fabricated affidavit was prepared and submitted for use against Plaintiff. To the extent the responsive USALSA records concern, pertain to, or were compiled in connection with proceedings in which Plaintiff was the named individual and are maintained in a system of records retrievable by such an identifier, Plaintiff's Privacy Act right of access under § 552a(d)(1) attaches, including as to records maintained in USALSA's Army Litigation Files system and General Litigation Branch case files. Plaintiff does not contend that every USALSA litigation communication is automatically a Privacy Act record; the access right is asserted only to the extent the responsive records satisfy the system-of-records and retrievability requirements of § 552a(a)(5).

**3. Exhaustion of Administrative Remedies as to Counts III and IV**

51.    The 20-business-day FOIA deadline for the original request, measured from its February 24, 2026, delivery date, elapsed on or about March 24, 2026. On March 12, 2026, USALSA issued a single determination letter (FOIA No. FA-26-0002), signed by COL Philip M. Staten, that did four things: (a) as to Requests 1 through 4, it stated only that USALSA was *"currently researching"* the matter and would *"initiate searches"* over an *"estimated ninety (90) days,"* without producing any record, identifying any responsive document, or stating the scope of any anticipated production; (b) as to Requests 1 through 3, it denied Privacy Act access on the ground that the records are *"not contained within a Privacy Act System of Records, indexed or retrieved by [Plaintiff's] name or personal identifier"*; (c) as to Requests 5 through 10, it asserted that the requests do not *"reasonably describe"* the records and threatened administrative closure if Plaintiff did not supply additional information by April 10, 2026; and (d) it denied Plaintiff's fee waiver, designated him an *"all others"* requester, and stated he would be charged fees under 32 C.F.R. § 286.12. The March 12 letter was not a lawful *"determination"* as to Requests 1 through 4 within the meaning of 5 U.S.C. § 552(a)(6)(A)(i) and *Citizens for Responsibility & Ethics in Wash. v. FEC*, 711 F.3d 180, 186-88 (D.C. Cir. 2013), because USALSA neither reviewed nor identified any responsive record, neither produced nor withheld anything, and committed only to an indefinite future search; a bare promise to search is not a determination, and the statutory clock therefore ran unanswered. On March 17, 2026, well within the cure period, Plaintiff transmitted to USALSA, via both email and U.S. Certified Mail, a formal Challenge to the Requests 5 through 10 particularity objection that reformulated each of those six requests with documentary-record specificity and separately appealed the fee-waiver denial, citing *Yeager v. DEA*,

678 F.2d 315 (D.C. Cir. 1982), *Kowalczyk v. DOJ*, 73 F.3d 386 (D.C. Cir. 1996), and

*Nation Magazine v. U.S. Customs Service*, 71 F.3d 885 (D.C. Cir. 1995), and identifying

USALSA's failure to perform the agency's mandatory pre-closure clarification obligation

under 32 C.F.R. § 518.8 and DoD Manual 5400.07 as an independent *Accardi* violation,

see *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954); *Morton v. Ruiz*,

415 U.S. 199, 235 (1974). USALSA's OTJAG FOIA office confirmed receipt on March

26, 2026. As of the filing date of this Complaint, USALSA has issued no further

determination, produced no responsive document, supplied no *Vaughn* Index, and taken

no action on the reformulated Requests 5 through 10 or the fee-waiver appeal. All

administrative remedies as to Count III are constructively exhausted under 5 U.S.C. §

552(a)(6)(C)(i). On June 8, 2026, nearly twelve weeks after the statutory deadline

elapsed, USALSA issued a second letter, again signed by COL Staten, asserting that *"a*

*comprehensive search of the files described above revealed no records responsive to your*

*request"* as to all ten categories. The June 8 letter recites the original ten requests

verbatim; it does not acknowledge, address, or process the reformulated Requests 5

through 10 that USALSA confirmed receiving on March 26, 2026, and it does not

mention the pending Privacy Act Appeal. The letter references two emails sent to

Plaintiff by the OTJAG FOIA office on April 3 and April 22, 2026, asking whether

Plaintiff could supply the current .mil email addresses of LTC Michael Roden and of

*"LTC Michael Mierau"*, an officer Plaintiff never named in any submission. Those

emails, moreover, were not sent by USALSA: both originated from the OTJAG FOIA

Team mailbox (usarmy.pentagon.hqda-otjag.mbx.otjaghqfoiarequest@army.mil) and are

signed *"OTJAG FOIA Team"*, the same mailbox that confirmed receipt of Plaintiff's

March 17, 2026 submissions, and the June 8 letter's attribution of that correspondence to USALSA itself misdescribes the record on which its determination relies. In candor: those two emails went unnoticed in Plaintiff's high-volume inbox until June 11, 2026, when the June 8 letter prompted a deeper search; Plaintiff located them and answered the same day, in writing, in the same thread. The emails do not cure the determination. The April 3, 2026 email states that the agency *"were able to locate LTC Sam Morris,"* yet the June 8 letter reports no records without stating that LTC Morris's records were ever searched, what systems were examined, or what terms were used; the agency's stated method, obtaining former officers' current addresses so it could *"reach out to them"*, is not a search for records from January 2010 through December 2013, which reside in Army enterprise email archives and USALSA litigation case files searchable by custodian name and case caption irrespective of any retired officer's present mailbox; the agency's own introduction of the name *"Mierau"* demonstrates that it consulted a source associating that officer with these matters; and the *"no records"* determination is refuted by USALSA-originated records already in Plaintiff's possession, including the June 8, 2010 directive from LTC Roden to LTC Seitz, the Army Litigation Division's June 2010 subpoena-receipt and *Touhy* correspondence, and the September 24–27, 2010 witness-funding correspondence, each squarely responsive to the categories USALSA says yielded nothing. On June 12, 2026, Plaintiff filed, by certified mail and email, a protective FOIA and Privacy Act Appeal of the June 8 determination through USALSA to the Office of the General Counsel, expressly without waiver of the constructive exhaustion already effected under 5 U.S.C. § 552(a)(6)(C)(i), together with a new first-party Privacy Act request for the complete FA-26-0002 processing file, including all

search slips, custodian taskings, and no-records certifications, and a written preservation demand.

52. USALSA's March 12, 2026, determination expressly denied Plaintiff's Privacy Act access request as to Requests 1 through 3 *"in full,"* on the stated ground that the responsive records are not maintained in a Privacy Act system of records retrievable by Plaintiff's name, and directed that any appeal be filed within sixty calendar days and labeled *"Privacy Act Appeal."* On March 17, 2026, within that window, Plaintiff filed a formal Privacy Act Appeal with the Office of the General Counsel, Secretary of the Army, pursuant to AR 25–22, The Army Privacy Program, paragraph 6–6(b)(7)(d) (22 Dec. 2016) (providing for administrative appeal of a Privacy Act access denial, through the denial authority, to the Office of the General Counsel, Secretary of the Army, within 60 calendar days), and 32 C.F.R. § 518.17, copied to USALSA, raising three independent grounds for reversal: (i) USALSA's system-of-records denial is refuted by four published Army systems of records that cover responsive USALSA records, including A0027-40 DAJA, A0027-1 DAJA, A0027-1k DAJA, and A0020-1 SAIG; (ii) the deliberative process privilege is categorically unavailable against a named subject's access request under 5 U.S.C. § 552a(d)(5), *Savada v. DOD*, 755 F. Supp. 6 (D.D.C. 1991), and *Martin v. Office of Special Counsel*, 819 F.2d 1181 (D.C. Cir. 1987); and (iii) the one-way ratchet at 5 U.S.C. § 552a(t)(1)-(2) independently compels disclosure of any record accessible under FOIA. USALSA's OTJAG office confirmed receipt of the appeal on March 26, 2026. The appeal authority has issued no decision within the time allowed by the Army's implementing regulations, and the appeal is deemed denied. Administrative remedies as to Count IV are exhausted. USALSA's June 8, 2026 letter confirms the

default: it restates the March 12, 2026 system-of-records denial in materially identical terms, as though no appeal existed, nearly three months after the appeal was filed and its receipt confirmed in writing.

53. The records sought from USALSA are, at minimum, subject to particularized in camera review and privilege-by-privilege testing of any Exemption 5 assertion. The crime-fraud doctrine requires particularized review of any attorney-client privilege or work-product claim over communications generated in furtherance of the documented misconduct; the government-misconduct doctrine substantially weakens any deliberative process privilege claim as to those records; the *Accardi* doctrine is relevant to whether the records document the regulatory departure itself, whether Exemption 5 should be tested document by document, and whether the agency can satisfy its foreseeable-harm burden; and the foreseeable-harm standard cannot be satisfied by reciting privilege labels where the records document the conduct of agency officials acting in their official capacity. 5 U.S.C. § 552(a)(8)(A); 32 C.F.R. § 97.2(f). To the extent Seitz filed documents in federal court on unauthorized letterhead, those documents entered the public record and any privilege was waived as to the publicly filed materials.

**D. FOIA Proceeding No. 3 (HRC): Counts V and VI**

54. The following facts establish the legal significance of the HRC records sought and the independent bases for compelled production. Each fact is established by contemporaneous documentary evidence obtained through court-supervised criminal discovery in Case No. 14-CR-00204 (Kenton Circuit Court), from the KYARNG Outlook PST file and scanned military records produced by the Commonwealth in June 2014.

55. The Barry Declaration and the Deletion-Reinsertion Cycle. Marian J. Barry, Chief, iPERMS Section, Army National Guard Readiness Center (NGB), executed a declaration in federal proceedings on July 24, 2012, attesting that the Letter of Reprimand *"was filed behind the DA 67-9, Relief for Cause on 2010-05-26 in 1LT Vaughan's OMPF"* and had been *"accurately filed."* That account of a continuous filing since 2010 cannot be reconciled with the file's history: an iPERMS screenshot printed December 16, 2011, shows both the Relief-for-Cause OER and the Letter of Reprimand present, while an automated iPERMS notification of July 25, 2012, records that both were re-added to the AMHRR on July 24, 2012, at 13:19, the day Barry executed her declaration and during active federal litigation to which a litigation hold had attached no later than March 26, 2012. The Motion to Dismiss, by contrast, represented to the same court that the Letter of Reprimand was never placed in the OMPF; the declaration and the Motion thus advanced contradictory sworn positions in the same case at the same time. NGB-JA attorney Todd S. Milliard acknowledged in writing on August 7, 2012, that he was *"talking with the NGB records custodian now to see what is going on,"* and on August 13 acknowledged *"a disconnect between the two as originally filed."* None of this was disclosed to any court, to Plaintiff, or to the ABCMR. Any deletion after March 26, 2012, without court authorization constitutes spoliation. *Beaven v. U.S. Dep't of Justice*, 622 F.3d 540 (6th Cir. 2010) (affirming spoliation adverse inference against the Department of Justice for destruction of a government record); *Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009) (en banc) (federal law governs spoliation sanctions); *Zubulake v. UBS Warburg*, 220 F.R.D. 212 (S.D.N.Y. 2003).

56. The Milliard *"Gaping Hole"* Admission. In a July 20, 2012, internal email, NGB-JA attorney Milliard independently identified the AR 623-3, paragraph 3-58c, referral violation, the failure to provide Plaintiff a copy of the AR 15-6 ROI before the Relief-for-Cause OER was issued, as the *"gaping hole"* the government could not overcome, writing: *"If we can't document that, then I think we're hosed."* This admission was never disclosed to Plaintiff, to any court, or to the ABCMR. If the AR 15-6 ROI was absent from the AMHRR on April 9, 2010, the date the RFC OER was issued, that absence independently establishes the regulatory violation Milliard identified. The iPERMS audit log for April 9, 2010, will establish this fact definitively.

57. LOR Ghost-Authorship and Conflict of Interest. Contemporaneous email records establish that LTC Dylan F. Seitz, the KYARNG's senior Judge Advocate and Plaintiff's adversary in federal litigation, drafted the Letter of Reprimand that was signed and issued by COL Wayne L. Burd. LTC Seitz transmitted the initial draft to COL Burd on March 24, 2010. The final signed LOR contains Seitz's exact dictated language verbatim. COL Burd signed what Seitz wrote and rewrote. This ghost-authorship was never disclosed to First Army, the ABCMR, or any federal court in which the LOR has been received in evidence. The LOR's file metadata, including author and last-modified-by fields, will corroborate the documentary record.

58. WOFR Transcript Incompleteness and the NGR 635-101 Mandatory Transmission Failure. LTC Seitz confirmed in a February 2, 2012, email that *"argument by counsel is not included in summarized transcripts."* His opening statement at the July 9, 2011, WOFR board told the board members that the AR 15-6 findings had *"already been decided"* and that Plaintiff's only role was to show cause, not to contest the underlying

facts, and the recorded deliberation exchange, in which the Recorder, LTC Seitz, told the board president, COL Jeffery Mizer, that First Army had made the determination that Plaintiff did the acts, with the acting Legal Advisor, LTC John K. Mills (the appointed Legal Advisor, COL James T. Cocanougher, being absent), concurring, confirms the board applied that instruction. Omitting that opening statement from the summarized transcript transmitted to First Army means First Army reviewed a materially incomplete record. Separately, NGR 635-101, paragraph 6(a)(3), required the Chief, National Guard Bureau to furnish one copy of the approved board proceedings and the withdrawal order to HRC (then RCPAC) for Plaintiff's permanent federal record. Whether that transmission was made, and whether the approved proceedings now reside in the AMHRR and when and by whom they were entered, are facts the iPERMS audit log will establish and that are directly material to the validity of Plaintiff's OTH separation. The board record transmitted to First Army also contains the falsified records themselves: the AR 15-6 investigation, admitted by the Recorder as Government Exhibit 4, was the stripped version omitting the Appointing Authority's signed *"Do NOT concur"* rejection of the guilt finding, and the pre-drafted Hirte affidavit was admitted as Government Exhibit 5 eleven days after its procurement. First Army's representation that it holds no legal-sufficiency review of the AR 15-6 is further placed in issue by COL James M. Sawyers' September 14, 2010 email stating that he had prepared *"the legal review for the 15-6 and the action memo"* and transmitting it by personal email for execution, evidence that such a review was created and may exist outside the systems First Army has searched.

59. The Alteration of the Physician-Signed Line of Duty Determination. On March 2, 2009, at Fort McCoy, Wisconsin, CPT Kendra Garbrecht, O.D., examined Plaintiff and signed a DA Form 2173 documenting *"reduced vision in right eye and frequent headaches"* from the June 20, 2008, RPG blast, finding the injury *"WAS INCURRED IN LINE OF DUTY,"* a *"PERMANENT PARTIAL"* prognosis, and that it *"IS likely to result in a claim against the Government for future medical care."* That physician-signed finding also triggered mandatory disability-evaluation processing under AR 635-40. Dr. Garbrecht departed Fort McCoy in December 2011. On August 25, 2012, Christopher Epperson opened a new Line of Duty workflow (NGB case KY-12-01060), and the NGB case-tracking audit log records that MAJ Derrick Frodge inserted unit-commander comments disputing the RPG strike and linking the claim to Plaintiff's pending withdrawal of federal recognition. On January 7, 2013, NGB approved a materially altered DA Form 2173 that (a) changed the treatment facility from *"Fort McCoy SRC"* to *"Ireland ACH"*; (b) deleted the right-eye vision injury, narrowing the condition to *"Post-Concussive Headache Syndrome"*; (c) downgraded the prognosis from *"PERMANENT PARTIAL"* to *"TEMPORARY"*; and (d) reversed the government-liability finding from *"IS likely"* to *"IS NOT likely."* The facility change reflects an electronically pulled medical-facility code rather than the physical examination site, evidence that the later form was regenerated electronically rather than copied from the signed paper original; Plaintiff was never treated at Ireland Army Community Hospital. None of these alterations was made or authorized by the signing physician, who had left Fort McCoy eight months earlier; the altered version bears no handwritten or digital signature by CPT Garbrecht, only a typed *"<< Signed >>"* certification in her name (typed *"Garbrecht Kendra E"* rather than *"Kendra*

*Garbrecht, O.D.* "), while the sole authenticated signature is MAJ Frodge's Common Access Card digital signature. Who altered the physician-signed form, when, and under what authority are facts the iPERMS audit log and the LOD case file will establish, and they bear on the integrity of Plaintiff's federal medical record. See AR 40-66, paragraph 3-7; the Statement, Part B.

60.     The Purple Heart Denial Adjudicated on the Altered and Incomplete Record. On January 28, 2025, Plaintiff applied to HRC for the Purple Heart (DA Form 4187), and on July 2, 2025, supplemented the application with the original physician-signed DA Form 2173 and ophthalmologic records, identifying the qualifying wound as the enemy-inflicted permanent partial loss of vision in his right eye. On October 23, 2025, the Chief, Awards and Decorations Branch (MAJ Francisco H. Bongio II) denied the application solely under the mild-traumatic-brain-injury and concussion provisions of AR 600-8-22, applying concussion-specific diagnostic criteria (loss of consciousness, or restriction from full duty by a medical officer for more than 48 hours) that were set out in Army Directive 2011-07 and MILPER Message 11-125, issued April 29, 2011, after both the June 20, 2008 injury and the March 2, 2009 line-of-duty determination. The denial never addressed the qualifying right-eye wound. It characterized the records as documenting only *"chronic headaches,"* asserted the earliest evaluations *"occurred 8 months after the incident,"* and recited an HRC Surgeon's Office determination of *"no evidence [Plaintiff was] treated by a medical officer ... immediately following the incident,"* a concussion-treatment criterion, while the original DA Form 2173 found the enemy-action injury incurred in line of duty with a *"PERMANENT PARTIAL"* disability and Plaintiff's contemporaneous February 22, 2009 record documented an ophthalmology evaluation

finding *"visual impairment,"* transient loss of *"about 90%"* of right-eye vision, and a *"possible vascular event."* That line-of-duty determination was governed by AR 600-8-4 (4 September 2008), which presumed an injury clearly incurred as a result of enemy action to be in line of duty and contained no concussion or loss-of-consciousness criteria. Whether HRC reviewed the original DA Form 2173 or the later version narrowed to *"Post-Concussive Headache Syndrome,"* and whether the contemporaneous in-theater records were in the *"military medical databases available to [HRC's] office,"* are facts the Purple Heart adjudication file, the Surgeon's Office consult, and the iPERMS audit log will establish, squarely responsive to the June 1, 2026 supplemental request and the April 8, 2026 consolidated request (Categories D and K). The October 23, 2025 denial is the final agency action through which the documented line-of-duty alteration caused cognizable injury, confirming the records sought are neither pre-decisional nor shielded by foreseeable harm. See the Statement, Part B.

61. The June 20, 2008, Engagement Award and Casualty Records. The Purple Heart adjudication turned on whether the June 20, 2008, RCP3 engagement (Task Force Workhorse / 201st Engineer Battalion; COP Zerok to FOB Orgun-E; vicinity grid 42SWB2282061904) produced qualifying wounds under AR 600-8-22. The Army's contemporaneous records answer that question: the battalion commander's September 7, 2008, directive ordered submission of Purple Hearts for the personnel on the unit's *"WIA spreadsheet,"* citing AR 600-8-22, paragraph 2-8, and calling the award *"an entitlement"*; and the Army awarded the Purple Heart to two soldiers wounded in the same engagement, SPC Williams (Plaintiff's gunner aboard MRAP A26) and SPC Kazee. The award orders and general orders, the supporting DA Forms 4187 and 638 and

citations, the *"WIA spreadsheet"* and the directive referencing it, the casualty documentation (DA Form 1156 feeder cards, DD Form 1380 cards, and 9-line / MEDEVAC records), and the convoy manifest or duty roster reflecting vehicle assignments including MRAP A26, are federal Army records reachable under FOIA, responsive to the June 1, 2026, supplemental request and Category D of the April 8, 2026, consolidated request, and subject to HRC's adequate-search obligation and its 32 C.F.R. § 518.18(a) duty to refer rather than deny for non-custody. Plaintiff consents to Exemption 6 and Privacy Act redaction of third-party identifiers and protected medical information; the award orders, general orders, and WIA spreadsheet establish the qualifying nature of the engagement without disclosing any third party's medical file. These records corroborate that Plaintiff was wounded in the same vehicle and blast for which his crewmembers were decorated, and that HRC adjudicated his application without reference to the engagement records documenting the qualifying event.

62. No categorical Exemption 5 withholding can be sustained as to these records without particularized in camera review and privilege-by-privilege testing, subject only to narrowly tailored Exemption 6 redaction of purely private third-party identifiers bearing no nexus to official conduct, which Plaintiff does not contest. The government-misconduct doctrine substantially weakens any deliberative process claim and supports particularized in camera review under *In re Sealed Case*, 121 F.3d 729, 746 (D.C. Cir. 1997). the Barry declaration, the undisclosed deletion-reinsertion cycle, Milliard's concealed *"gaping hole"* admission, Seitz's ghost-authorship of the LOR, the WOFR transcript omission, the post-signature alteration of the physician-signed Line of Duty determination, and the October 23, 2025, Purple Heart denial adjudicated on that altered

and incomplete record collectively establish a pattern of conduct that, at minimum, requires the Court to test each privilege assertion document-by-document under particularized in camera review rather than accept categorical Exemption 5 withholding. As the named subject, Plaintiff holds an independent right of access under 5 U.S.C. § 552a(d)(1). HRC cannot demonstrate foreseeable harm from disclosing an audit log of Plaintiff's own personnel file. Under the *Accardi* doctrine, *Accardi v. Shaughnessy*, 347 U.S. 260 (1954), HRC must follow its own mandatory procedures governing AMHRR accuracy and accessibility under AR 600-8-104, and records bearing on whether those procedures were honored are compelled by that doctrine independently of FOIA.

**E. FOIA Proceeding No. 4 (First Army): Counts VII and VIII**

63. On April 16, 2026, Plaintiff submitted a formal FOIA and Privacy Act request to Headquarters, First United States Army, ATTN: FOIA/Privacy Act Officer, 1 Rock Island Arsenal, Building 68, Rock Island, IL 61299-8100, via U.S. Certified Mail, Return Receipt Requested. The request was received by First Army on April 21, 2026, at 12:10 p.m. (USPS Tracking No. 9589 0710 5270 3358 2835 97).

64. The request sought nine categories of records (Categories A through I) relating to: First Army's receipt and processing of both WOFR referral packages; the complete official Records of Proceedings for both WOFR Boards; all records concerning LTG Bednarek's March 26, 2012, disapproval; the formal challenge memoranda (October 27 and November 27, 2011) submitted by Plaintiff and LTC Bell to First Army; all records of the ex parte communications between First Army's Chief of Military Justice (MAJ Michael L. Roberts) and LTC Seitz, including the March 20, 2012, email in which Roberts advised Seitz regarding the anticipated CG disapproval and set out proposed notification

memorandum language without notifying Respondent or his counsel; the complete chain of custody for DA Form 1574, Page 4; and all internal First Army communications regarding Plaintiff.

65. The 20-business-day statutory response deadline elapsed on or about May 19, 2026. As of June 15, 2026, First Army has produced no responsive records, provided no acknowledgment of receipt, assigned no tracking number, and made no response of any kind. Plaintiff has constructively exhausted all available administrative remedies.

66. No categorical Exemption 5 withholding can be sustained as to the records sought from First Army without particularized in camera review and privilege-by-privilege testing, subject only to narrowly tailored Exemption 6 redaction of purely private third-party identifiers bearing no nexus to official conduct, which Plaintiff does not contest. The government-misconduct doctrine substantially weakens any deliberative process privilege assertion as to records reflecting MAJ Roberts's ex parte communications with LTC Seitz, First Army's awareness of the Recorder's omission of his own opening statement from the Summary of Proceedings, the chain of custody of the stripped DA Form 1574, and First Army's response or non-response to the three formal challenge memoranda. The crime-fraud doctrine and selective-disclosure principles further support privilege-by-privilege testing of any remaining exemption assertion.

**F. FOIA Proceeding No. 5 (National Guard Bureau): Counts IX and X**

67. FOIA Proceeding No. 5 (National Guard Bureau). On September 29, 2025, Plaintiff submitted to the National Guard Bureau (NGB) a FOIA and Privacy Act request for all versions of, and the complete audit trail for, the DA Form 2173 Line of Duty determination in his name (NGB case KY-12-01060), including the records identifying

who modified the physician-signed form after CPT Kendra Garbrecht's March 2, 2009, signature. On March 18–19, 2026, Plaintiff submitted to NGB a further FOIA and Privacy Act request for NGB's own records concerning the First (July 9, 2011) and Second (March 12, 2013) Withdrawal of Federal Recognition Board proceedings, NGB's oversight and legal-sufficiency review of those proceedings, NGB's coordination with and advisory submissions to the ABCMR in Docket No. AR20120006999, the NGB Office of Information and Privacy files reflecting the disposition of Plaintiff's prior FOIA requests, and the NGB records of BG Natalie L. Lewellen. Plaintiff is the named subject of every record requested and retains proof of transmission of each request (Exhibits 28 and 29).

68. The records sought are within NGB's custody and control. NGB is the supervisory authority over Army National Guard officer-separation proceedings under 32 U.S.C. § 323 and NGR 635-101; it was the final approving authority for Plaintiff's Line of Duty determination, approved January 7, 2013; it is the custodian of the Office of the Chief Counsel litigation file described in the Statement, Part C; and it processes FOIA requests for records created under the seal of the Chief, National Guard Bureau.

69. NGB did not act as a neutral records custodian in Plaintiff's matter; it was an operational participant in the underlying litigation, which makes its records central rather than peripheral. As established by contemporaneous government emails produced in *Commonwealth v. Vaughan*, No. 14-CR-204 (Kenton Circuit Court, June 18, 2014): (a) Todd S. Milliard of the NGB Litigation and Employment Law Division, Office of the Chief Counsel, authored the Government's dispositive Motion to Dismiss in Vaughan v. Kentucky Army National Guard, 3:12-cv-00035-DCR, and transmitted it to AUSA David

Middleton on July 21, 2012, for filing under the AUSA's signature; (b) on July 20, 2012, Milliard acknowledged in writing a *"gaping hole"* in the Government's case arising from the AR 623-105 referral-procedure violation, stating the Government was *"hosed on the APA argument"* if pre-OER referral to Plaintiff could not be documented; (c) Milliard directed the content of at least four declarations filed with the federal court; and (d) on March 5, 2012, NGB Office of Information and Privacy Chief Jennifer Nikolaisen issued a standing order that there be *"NO communication"* with Plaintiff on any of his pending FOIA requests *"unless Mr. Milliard advises,"* expressly subordinating NGB's statutory FOIA function to the litigation strategy managed by NGB counsel. And (e) on June 28, 2012, while drafting the Government's dispositive motion, Milliard wrote that he was *"discussing the FOIA implications with Ms. Nikolaisen now,"* that the WOFR hearing tapes could be *"released"* if Plaintiff's then-abeyant FOIA request revived, and asked Seitz whether there was *"any credence"* to Plaintiff's allegation that the summarized transcript *"left out significant portions of the hearing testimony,"* noting that AUSA Middleton had *"expressed some concern"* about it, the Government's own litigation counsel weighing the FOIA disposition of the very hearing records at issue in this action against the Government's litigation posture, in coordination with NGB's FOIA chief. NGB's present non-response to requests for those same hearing records continues an established practice, not an oversight. These facts are developed in the Statement, Part C.

70. Because NGB's responsive records were generated in furtherance of, or in direct response to, the conduct described in the accompanying Statement (Parts A, B, and C), any assertion of FOIA Exemption 5 over them is defeated, or at minimum subject to particularized in camera review and privilege-by-privilege testing, under the crime-fraud

exception, the government-misconduct exception, and the *Accardi* doctrine, on the authorities set out in paragraphs 3, 10, and 23 above and in the Statement, Part C.

71. Exhaustion. More than twenty business days have elapsed since each NGB request. As of June 15, 2026, NGB has produced no responsive records, issued no determination, assigned no tracking number as to the September 2025 request, and asserted no exemption. Plaintiff has constructively exhausted his administrative remedies as to NGB under 5 U.S.C. § 552(a)(6)(C)(i).

72. Supplemental NGB requests. On June 1, 2026, Plaintiff submitted to NGB two supplemental FOIA and Privacy Act requests, each sent by USPS Certified Mail, Return Receipt Requested. The first is a focused request directed to NGB Line of Duty case KY-12-01060, seeking every version of the DA Form 2173 and DD Form 261 and the complete case-tracking and electronic audit trail; the digital-signature, authentication, and metadata records for the physician-certification block (Blocks 16–18) of the 2012–2013 version and the identity of the account that populated or applied CPT Garbrecht's name and certification; the records reflecting whether CPT Garbrecht authorized or authenticated the later version; the HRC-to-NGB delegation of approving authority; the signature-authority records for the January 7, 2013, NGB approval memorandum; and the AR 600-8-4 and AR 40-66 compliance records for each modification (Exhibit 35; USPS Certified Mail No. 9589 0710 5270 3660 6674 74). The second targets (a) the signature-authentication and modification records for the DA Form 2173, including the digital-signature metadata and audit trail for the physician-certification block of the 2012–2013 version, the identity of the account that populated CPT Garbrecht's certification, and the signature authority for the January 7, 2013, NGB approval; (b) the NGB Office of Chief

Counsel litigation file, including Todd Milliard's file and the declarations he directed; (c) the NGB Inspector General inquiry opened December 19, 2013; and (d) the NGR 635-101, paragraph 6(a)(3), transmission records and the federal-recognition-withdrawal file (Exhibit 31; USPS Certified Mail No. 9589 0710 5270 3358 2918 51, Return Receipt No. 9590 9402 9666 5199 4768 59). The twenty-business-day determination period as to these supplemental requests will elapse in early July 2026, during the pendency of this action; upon its lapse Plaintiff will have constructively exhausted as to those records, and Plaintiff reserves the right to supplement this Complaint under Fed. R. Civ. P. 15(d). The records identified in clauses (a) and (c) above do not, however, depend on the June 1, 2026, supplemental request for exhaustion: the DA Form 2173 signature-authentication records were already requested of NGB on September 29, 2025 (Exhibit 28), and Plaintiff's complete NGB Inspector General file was separately requested of the NGB Inspector General (NGB-IGA) by Privacy Act and FOIA demand dated February 22, 2026 (Exhibit 32). The twenty-business-day period on the February 22, 2026, IG demand elapsed on or about March 23, 2026, and Plaintiff has constructively exhausted his administrative remedies as to the NGB-IG records under 5 U.S.C. § 552(a)(6)(C)(i).

## CLAIMS FOR RELIEF

## RECORDS REQUESTED, CUSTODIANS, SYSTEMS OF RECORDS, AND THE PRIMA FACIE BASIS FOR RELIEF

72.1.   The prima facie elements of each Count are stated below, followed by two tables identifying the records at issue, their custodians, and the systems of records in which they are maintained. They are pleaded for the limited FOIA and Privacy Act purposes identified in Paragraph 3, namely to identify likely custodians and search locations, to establish the systems of records retrievable by Plaintiff's identifier, to support

particularized review of any claimed exemption, and to address foreseeable harm under 5 U.S.C. § 552(a)(8)(A). They are not pleaded as a request for merits adjudication of any underlying claim.

## A. Prima Facie Elements of Each Count

72.2.    Each Count is established by three elements: an agency subject to the Act, agency records that are reasonably described, and the agency's withholding of or failure to respond to those records.

## B. Contested Record Categories, Custodians, and Likely Systems

72.3.    The records Plaintiff seeks are reasonably described and are held by identifiable custodians within identifiable systems of records. The following table maps the principal contested categories to the custodian, the approximate date range, and the system of records likely to contain them. It demonstrates that Plaintiff seeks reasonably described records, and not an open-ended inquiry into a theory.

| Record Category | Custodian | Date Range | System Likely to Hold It |
|---|---|---|---|
| Hirte affidavit: drafts, edits, routing, and transmission records | NGB-OCC; KYARNG-JAG | 2010-2011 | A0027-40 DAJA (FOIA); A0020-1 SAIG |
| DA Form 1574 / AR 15-6 ROI with the Morrison non-concurrence annotation | KYARNG-JAG; ARBA | 2009-2010 | A0015-185 SFMR; OMPF successor |
| AR 15-6 ROI and the Appointing Authority disapproval of the guilt finding | KYARNG; First Army | 2009 | A0015-185 SFMR; First Army WOFR file |
| Seitz Motion to Quash and coordination communications | USALSA Litigation Div.; OTJAG | 2010-2012 | A0027-40 DAJA (FOIA) |
| Milliard Motion to Dismiss and coordination communications | NGB-OCC; USALSA | 2012 | A0027-40 DAJA (FOIA) |
| Ghost-authored Letter of Reprimand | HRC; KYARNG | 2009-2010 | OMPF successor (formerly A0600-8-104) |
| WOFR board records and ex parte coaching communications | First Army | 2011-2013 | First Army WOFR file; A0015-185 SFMR |
| DA Form 2173 signature-authentication and modification records | HRC; NGB | 2008-2021 | A0600-8-1b AHRC (Line of Duty) |
| NGB Inspector General inquiry | NGB-IGA | 2013-2026 | INGB 005; A0020-1 SAIG |
| Purple Heart adjudication file (DA Form | HRC Awards and | 2025 | A0600-8-22 AHRC |

| 4187 of Jan. 28, 2025; denial of Oct. 23, 2025) | Decorations Branch | | |
|---|---|---|---|
| Federal records of the June 20, 2008 RCP3 engagement | HRC; NGB | 2008 | A0600-8-22 AHRC; OMPF successor |
| FOIA and Privacy Act processing files for these requests | ARBA; HRC; First Army; NGB FOIA offices | 2025-2026 | A0025-55 / A0340-21 OAA; INGB 001 |

## C. Systems of Records and the Privacy Act Right of Access

72.4. A Privacy Act first-party access right under 5 U.S.C. § 552a(d)(1) attaches to records maintained in a system of records and retrieved by the individual's name or personal identifier. 5 U.S.C. § 552a(a)(4)-(5); *Henke v. U.S. Dep't of Commerce*, 83 F.3d 1453 (D.C. Cir. 1996); *Maydak v. United States*, 630 F.3d 166 (D.C. Cir. 2010). Records not retrieved by Plaintiff's identifier, including litigation files retrieved by court docket number and records in which Plaintiff is not the named subject, are not subject to the access right but remain agency records subject to FOIA, 5 U.S.C. § 552. The following table identifies the systems of records and the resulting route of access. Plaintiff pleads each Privacy Act Count in the alternative under FOIA.

| System of Records (SORN) | Component / Custodian | Persons and Records Covered | Retrieved By | Route of Access |
|---|---|---|---|---|
| A0600-8-104 APS and successor system (IPPS-A) | Army G-1 / HRC | Soldiers, retirees, veterans; OMPF / AMHRR | Name, SSN, DoD ID | Privacy Act (d)(1) and FOIA |
| A0015-185 SFMR, Correction of Military Records Cases | ARBA, Arlington, VA | Applicants to correct records or for discharge review | Applicant surname, SSN | Privacy Act (d)(1) |
| A0600-8-22 AHRC, Military Awards | HRC Awards and Decorations Branch | Soldiers; awards and decorations adjudication | Name, SSN | Privacy Act (d)(1) |
| A0600-8-1b AHRC, Line of Duty Investigations | HRC | Soldiers; LOD determinations | Name, SSN | Privacy Act (d)(1) |
| A0027-40 DAJA, Litigation Case Files | OTJAG, U.S. Army Litigation Division | Parties and named defendants in litigation | Surname and court docket number | FOIA (primary); (d)(1) contested |
| A0027-1k DAJA, JAG Professional Conduct | OTJAG Professional | Attorneys who are the subject of a complaint | Subject attorney's name | FOIA (Plaintiff |

| Files | Responsibility Branch | | | is the complainant, not the named subject) |
|-------|----------------------|---|---|-------------------------------------------|
| A0027-3 DAJA, Legal Assistance Files | OTJAG: SJA offices | Personnel and dependents receiving legal assistance | SSN, client surname | Privacy Act (d)(1) |
| A0020-1 SAIG, Inspector General Records | Army Office of the Inspector General | Persons who made or are the subject of IG allegations | Name, SSN cross-referenced to case number | Privacy Act (d)(1); (k)(2) / (k)(5) carve-out applies |
| INGB 001 and INGB 005 (NGB) | NGB-IGA; NGB FOIA / PA office | NGB IG complaints; FOIA and PA case files | Name | Privacy Act (d)(1) and FOIA |
| A0025-55 / A0340-21 OAA | Army FOIA and Privacy offices | FOIA and Privacy Act requesters | Requester name | Privacy Act (d)(1) |

72.5. Plaintiff's personnel records, the Army Military Human Resource Record and the Official Military Personnel File, were maintained in the Army personnel system of records designated A0600-8-104, Army Personnel Systems (APS), and in its successor system, the Integrated Personnel and Pay System-Army (IPPS-A). Any redesignation, rescission, or replacement of a system-of-records notice does not alter the status of the underlying records as agency records subject to FOIA, nor does it extinguish Plaintiff's right of access to records retrieved by his identifier in any successor system.

72.6. To the extent Defendants invoke the (k)(2) or (k)(5) exemptions for Inspector General records in system A0020-1 SAIG, those exemptions do not authorize withholding from Plaintiff, as the subject, where he has been denied a right, privilege, or benefit as a result of the maintenance of the records, except to the extent disclosure would reveal the identity of a confidential source. 5 U.S.C. § 552a(k)(2).

**D. Why the Factual Detail Is Necessary: Defeating Exemption 5 as to Attorney and Deliberative Records**

72.7.   The detailed factual allegations in this Complaint and in the accompanying Statement are pleaded for one principal FOIA purpose: to establish the threshold showing that defeats any claim of FOIA Exemption 5 over the USALSA and Office of The Judge Advocate General records, which Defendants are most likely to withhold as attorney-client communications, attorney work product, or deliberative-process material. Exemption 5 incorporates only those privileges available to the *Government in civil discovery. FTC v. Grolier, Inc.*, 462 U.S. 19, 26 (1983). Each such privilege is defeated on the facts pleaded, and the factual detail is necessary to make that showing record-specific rather than conclusory.

72.8.   First, crime-fraud. The attorney-client privilege and the work-product doctrine do not protect communications made in furtherance of a crime or fraud. *Clark v. United States*, 289 U.S. 1, 15 (1933) (the privilege takes flight if the relation is abused); *United States v. Zolin*, 491 U.S. 554, 572 (1989) (a factual basis adequate to support a good-faith belief by a reasonable person that in camera review may reveal evidence that the exception applies entitles the requester to such review); *In re Antitrust Grand Jury*, 805 F.2d 155, 167-68 (6th Cir. 1986). The facts pleaded, including the fabrication of the Hirte affidavit, the false statements within the Motion to Quash, and the coordinated false official statements across federal and military fora, make the prima facie showing that the privileged communications were themselves instruments of fraud upon the court and of false official statements, and therefore are not privileged.

72.9.   Second, government misconduct, and the Privacy Act. The deliberative-process privilege disappears when there is reason to believe government misconduct occurred. *In re Sealed*

*Case*, 121 F.3d 729, 738, 746 (D.C. Cir. 1997). Independently, the deliberative-process privilege is not available against a first-party Privacy Act requester at all and cannot be asserted under 5 U.S.C. § 552a to withhold a requester's own records. *Savada v. U.S. Dep't of Defense*, 755 F. Supp. 6, 8-9 (D.D.C. 1991); *Martin v. Office of Special Counsel*, 819 F.2d 1181, 1187 (D.C. Cir. 1987). For the name-retrieved records identified in the table above, Exemption 5 deliberative material must therefore be produced through the Privacy Act regardless of its treatment under FOIA.

72.10. Third, foreseeable harm. Even as to validly privileged Exemption 5 material, Defendants may not withhold unless they show that disclosure would foreseeably harm an interest the privilege protects; generalized or boilerplate assertions do not suffice. 5 U.S.C. § 552(a)(8)(A); *Reporters Committee for Freedom of the Press v. FBI*, 3 F.4th 350, 369-72 (D.C. Cir. 2021). *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 370–71 (D.C. Cir. 2020). Plaintiff does not ask this Court to adjudicate the underlying fraud on the merits. Plaintiff pleads these facts solely to establish his entitlement to particularized, document-by-document in camera review of any Exemption 5 assertion, and to defeat any categorical or boilerplate claim of privilege over the attorney, deliberative, and litigation records.

## COUNT I

**FOIA Violation (ARBA): Failure to Search and Unlawful Withholding of ABCMR Records**

73. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

74. Defendant was required to conduct a search reasonably calculated to uncover all records responsive to Plaintiff's July 5, 2025, request. *Oglesby*, 920 F.2d at 68; Weisberg, 705

F.2d at 1351; Rugiero, 257 F.3d at 547. Producing two documents already in the requester's possession does not satisfy this obligation. ARBA never conducted an adequate search of the record systems it maintains for ABCMR Docket No. AR20120006999, and the fact that the Board's own 2013 decision identifies materials it received and considered that were not produced confirms it.

75. Defendant has failed to produce records responsive to Categories (a), (b), (c), and (e) of Plaintiff's request, and has failed to produce complete materials within Category (d). Defendant identified no legal basis for withholding these records and cannot demonstrate foreseeable harm from their disclosure. 5 U.S.C. § 552(a)(8)(A).

76. Defendant failed to provide a *Vaughn* Index as expressly demanded. *This failure is an independent FOIA violation. Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973); *Jones v. FBI*, 41 F.3d 238, 241-42 (6th Cir. 1994); King, 830 F.2d at 217-19. Defendant failed to issue timely determinations on Plaintiff's initial request and administrative appeal. The burden of proof rests on Defendant. 5 U.S.C. § 552(a)(4)(B).

## COUNT II

### Privacy Act Violation (ARBA): Denial of Named Applicant's Access to His Own Board Records

77. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

78. As the named applicant in ABCMR Docket No. AR20120006999, Plaintiff has an independent right under 5 U.S.C. § 552a(d)(1) to access all records pertaining to himself in ARBA's Privacy Act system of records. The ABCMR case file system is a Privacy Act system of records under 32 C.F.R. § 581.3(i)(2)(ii). Plaintiff explicitly invoked this right in his July 5, 2025, request and his February 25, 2026, appeal.

79. The deliberative process privilege is categorically unavailable as a basis for withholding Plaintiff's records under Count II. The Privacy Act's withholding provisions, 5 U.S.C. § 552a(d)(5) and subsections (j) and (k), do not incorporate FOIA's Exemption 5 deliberative process privilege. The only permissible withholding ground under § 552a(d)(5) is records compiled in reasonable anticipation of a civil action or proceeding. ABCMR staff summaries, board recommendations, and legal sufficiency reviews do not qualify. The ABCMR case file also necessarily encompasses the complete record of the 1st Withdrawal of Federal Recognition board, which includes the executed Hirte affidavit admitted into evidence by LTC Seitz in his capacity as Recorder. ARBA's failure to produce the complete case file means it withheld the very fabricated document whose creation is the crime-fraud at the heart of this proceeding. Count II provides an independent and complete basis for full production of all ABCMR case file records regardless of any Exemption 5 characterization.

80. Defendant's failure to produce all records pertaining to Plaintiff violates 5 U.S.C. § 552a(d)(1), entitling Plaintiff to an order compelling production and an award of costs and fees under 5 U.S.C. § 552a(g)(1)(B) and (g)(3)(B).

## COUNT III

### FOIA Violation (USALSA): Failure to Respond to Records Request Documenting Fraud on the Court and Touhy Violations by LTC Dylan F. Seitz

81. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

82. Defendant was required to issue a lawful determination within twenty business days whether to comply with Plaintiff's February 19, 2026, FOIA request and to produce all responsive non-exempt records. USALSA's March 12, 2026, letter did not discharge that

duty. As to Requests 1 through 4, USALSA reviewed no record, produced nothing, withheld nothing, identified no exemption, and committed only to an indefinite future search, which is not a *"determination"* under 5 U.S.C. § 552(a)(6)(A)(i) and *CREW v. FEC*, 711 F.3d 180, 186-88 (D.C. Cir. 2013). As to Requests 5 through 10, USALSA refused to search on a particularity objection that is legally unfounded under *Yeager v. DEA*, 678 F.2d 315 (D.C. Cir. 1982), and *Kowalczyk v. DOJ*, 73 F.3d 386 (D.C. Cir. 1996), and that USALSA was independently obligated under 32 C.F.R. § 518.8 and DoD Manual 5400.07 to cure by seeking clarification rather than threatening closure, see Nation Magazine, 71 F.3d 885 (D.C. Cir. 1995), and its failure to do so is itself an *Accardi* violation supplying a second, independent constructive-denial theory, *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954); Plaintiff in any event reformulated all six requests with documentary-record specificity on March 17, 2026, and USALSA has neither searched nor responded. No exemption claim has been made as to any category, no *Vaughn* Index has been produced, and no responsive record has been released. Deferring the statutory clock and refusing to search is not compliance; it is a violation of FOIA. The burden of proof rests on Defendant. 5 U.S.C. § 552(a)(4)(B). USALSA's June 8, 2026 *"no records"* determination does not discharge the duty either: it reported a *"comprehensive search"* of request descriptions the agency had declared unsearchable while never processing the reformulations it confirmed receiving; it described no system searched, no custodian tasked, and no terms used; it rested on an inability to locate former officers' current email addresses, although the 2010–2013 records sought reside in Army email archives and litigation case files searchable by name and case caption; and it is refuted by responsive USALSA-originated records in

Plaintiff's possession. A search that fails to locate records the agency itself authored, and that the requester already holds, is inadequate as a matter of law. Plaintiff's June 12, 2026 protective appeal of that determination was filed without waiver of the constructive exhaustion already effected. The June 8 determination also violates the Army's own regulation, AR 25-55: it rests on no signed custodian certificate describing the areas searched, the methods employed, or the terms used (paragraph 5-8(a)); it issued from a self-granted timeline that exceeded the ten-working-day extension cap without any negotiated alternative (paragraph 5-12); and it conditioned the search on requester-supplied custodian addresses contrary to the regulation's mandate of reasonable electronic searches (paragraph 3-5(b)). See paragraph 23.1 above.

83. The crime-fraud doctrine, at minimum, requires particularized in camera review and privilege-by-privilege testing of any Exemption 5 assertion across all ten categories, because the communications and records sought were generated in furtherance of, or in institutional response to, Seitz's unauthorized court filings, the fabricated Hirte affidavit, and his material misrepresentations to a federal tribunal. Defendant has not articulated, and cannot articulate by reciting privilege labels, a foreseeable harm within the meaning of 5 U.S.C. § 552(a)(8)(A) from disclosing records that document its own subordinate officer's defiance of its own written directives. Where Plaintiff contends that the records sought include *Brady* and *Giglio* material in active state post-conviction proceedings, the records' direct constitutional materiality bears on the foreseeable-harm and public-benefit analyses properly before this Court but does not itself compel FOIA release; FOIA is not a criminal discovery statute, and Plaintiff does not contend that *Brady* or *Giglio* independently override an otherwise valid FOIA exemption. *Rimmer v. Holder*, 700 F.3d

246, 257 (6th Cir. 2012). What the constitutional materiality does establish, for purposes of 5 U.S.C. § 552(a)(8)(A), is the absence of any cognizable foreseeable harm from disclosing records whose constitutional and administrative relevance is concrete and imminent in pending proceedings. The government's institutional motive to withhold is itself the reason disclosure is compelled: USALSA and ARBA records establish that AUSA Middleton, a federal prosecutor, directed the procurement of a fabricated affidavit from a federal ICAC task force member for submission to his own court; that affidavit was recycled into the military administrative proceeding that produced the OTH discharge that entered Plaintiff's criminal forensic evaluation as a named predicate for the primary diagnosis driving the criminal responsibility conclusion; and Detective Hirte, a Northwest ICAC Member and CFCE-certified federal forensic examiner, signed that pre-drafted document as his independent sworn statement. The *Giglio* cascade from these facts is systemic, extending to every federal ICAC prosecution in which Hirte participated as an affiant or witness and to every EDKY federal prosecution in which Middleton's credibility or the independence of his evidentiary submissions was material. The Army and DOJ have a documented institutional interest in suppressing the USALSA and ARBA records precisely because disclosure would trigger that cascade; that motive to withhold is the inverse of a cognizable foreseeable harm and this Court should weigh it against any claimed exemption. 5 U.S.C. § 552(a)(8)(A). Defendant is wrongfully withholding, or has failed to search for and produce, agency records in violation of 5 U.S.C. § 552. The burden of proof rests on Defendant.

84. No categorical Exemption 5 withholding can be sustained as to the records sought without particularized in camera, privilege-by-privilege review, for the reasons stated in

Paragraph 23 (crime-fraud, government-misconduct, and *Accardi* doctrines), subject only to narrowly tailored Exemption 6 redaction of purely private third-party identifiers, which Plaintiff does not contest. As to these USALSA records specifically, the foreseeable-harm standard precludes withholding because the government cannot identify a foreseeable harm from disclosing records documenting its own officials' misconduct, 5 U.S.C. § 552(a)(8)(A); *Reporters Comm.*, 3 F.4th at 372; and Exemption 7(A) is inapplicable because all referenced civil proceedings are concluded with no pending enforcement action.

## COUNT IV

### Privacy Act Violation (USALSA): Denial of Named Individual's Access to Records About Himself

85. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

86. Plaintiff formally invoked his independent Privacy Act rights under 5 U.S.C. § 552a(d)(1) in a supplemental letter dated March 2, 2026, delivered to USALSA on March 5, 2026. That letter constituted a proper Privacy Act access request within the meaning of 5 U.S.C. § 552a(d)(1) and the Army's Privacy Act implementing regulations at 32 C.F.R. Part 518.

87. Plaintiff is the named individual within the meaning of § 552a(d)(1) as to responsive USALSA records that are maintained in a Privacy Act system of records and retrievable by Plaintiff's name, Social Security number, case name, case number, docket number, or other personal identifier. *Vaughan v. Brigham* was Plaintiff's own civil lawsuit. Seitz's unauthorized pleadings targeted Plaintiff, and the fabricated Hirte affidavit was prepared and submitted for use against Plaintiff. To the extent responsive USALSA records in the

Army Litigation Files system, the USALSA General Litigation Branch case files, or other USALSA systems of records satisfy the retrievability requirement of 5 U.S.C. § 552a(a)(5), Privacy Act access rights attach. Plaintiff does not assert that every USALSA litigation communication is automatically a Privacy Act record; the access right is asserted only to the extent the responsive records satisfy the system-of-records and retrievability requirements.

88. The deliberative process privilege is categorically unavailable as a basis for withholding Plaintiff's records under Count IV. The Privacy Act's withholding provisions do not incorporate FOIA's Exemption 5 deliberative process privilege. The (j)(2) and (k)(2) law-enforcement exemptions are inapplicable because the USALSA records at issue were generated in the course of USALSA's litigation oversight and regulatory compliance functions, not for law enforcement purposes against Plaintiff. The only permissible withholding ground is § 552a(d)(5), which covers records compiled in reasonable anticipation of a civil action or proceeding. Internal USALSA communications about Seitz's conduct do not qualify.

89. USALSA denied Plaintiff's Privacy Act access request as to Requests 1 through 3 in its March 12, 2026, determination, asserting that the records are not retrieved by Plaintiff's name, and deferred Request 4 pending a search. That denial is unlawful: the responsive records are covered by published Army systems of records (including A0027-40 DAJA, A0027-1 DAJA, A0027-1k DAJA, and A0020-1 SAIG), are retrievable by Plaintiff's name and the case numbers of his own litigation, and pertain to him within the meaning of 5 U.S.C. § 552a(d)(1). Plaintiff timely appealed to the Office of the General Counsel, Secretary of the Army on March 17, 2026; the appeal authority has not decided it within

the time allowed, and it is deemed denied under 5 U.S.C. § 552a(g)(1)(B). USALSA's June 8, 2026 letter, which restates the identical denial without acknowledging the appeal, confirms that default. Count IV provides an independent and complete basis for ordering full production of all responsive USALSA records regardless of any Exemption 5 characterization. That default likewise violates AR 25-55, paragraphs 5-15(b) and 5-15(d), which required prompt transmission of the appeal to the Office of the General Counsel with a complete file and a final determination normally within twenty working days of receipt. See paragraph 23.1 above.

## COUNT V

**FOIA Violation (HRC): Failure to Respond to Records Request Documenting AMHRR Spoliation, Ghost-Authored LOR, and NGR 635-101 Mandatory Transmission Failure**

90. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

91. Plaintiff submitted a comprehensive FOIA and Privacy Act request to HRC on April 8, 2026, via U.S. Certified Mail, Return Receipt Requested, and concurrently via email to usarmy.knox.hrc.mbx.foia@army.mil. The request was delivered to HRC's FOIA office at Fort Knox, Kentucky, on April 10, 2026, at 9:08 a.m. (USPS Tracking No. 9589 0710 5270 3358 2918 37). It seeks thirteen categories of records: Category A (complete current AMHRR and document manifest); Category B (confirmation of presence or absence of specific documents including the AR 15-6 ROI, DA Form 1574, LOR, and RFC OER); Category C (complete iPERMS audit log from January 2009 to present); Category D (all HRC records relating to Plaintiff, his separation, and AMHRR modifications); Category E (AMHRR snapshots at four legally critical dates); Category F (post-litigation-hold modification records); Category G (AR 623-3, paragraph 3-58c, referral compliance

records); Category H (LOR ghost-authorship records); Category I (WOFR board transcript completeness records); Category J (NGR 635-101, paragraph 6(a)(3), mandatory federal transmission records); Category K (DA Form 2173 modification history); Category L (MEB/PDES processing records); and Category M (Congressional correspondence records). The request was timely filed and properly directed to the designated HRC FOIA office. Defendant Department of the Army, acting through HRC as the custodian of Plaintiff's AMHRR, is an agency within the meaning of 5 U.S.C. § 552(f)(1); HRC is the Army component responsible for searching for and producing the records at issue in Counts V and VI, and the request is subject to FOIA's mandatory search and production requirements.

92. HRC was required to determine within twenty business days whether to comply with the request and to notify Plaintiff of that determination, any applicable exemptions claimed, and Plaintiff's right to appeal. 5 U.S.C. § 552(a)(6)(A)(i). Measured from the April 10, 2026, delivery date, the twenty-business-day FOIA deadline expired on or about May 8, 2026. HRC was independently required to process Plaintiff's first-party Privacy Act access request, to acknowledge receipt under applicable DoD Privacy Act procedures, and either to grant access or to issue a written denial stating the reason for denial and Plaintiff's appeal rights. As of the filing date of this Complaint, HRC has issued no determination, no acknowledgment, no access, no written denial, no extension notice, and no production in response to the request. HRC's complete silence constitutes a constructive denial entitling Plaintiff to immediate judicial review under 5 U.S.C. § 552(a)(6)(C)(i). Independently, the DA Form 2173 / Line of Duty records sought in Category K were also requested of HRC on September 29, 2025, by a request transmitted

the same day to both the NGB and HRC FOIA offices (Exhibit 28), well more than twenty business days before this Complaint, providing a separate and earlier basis for constructive exhaustion as to those records.

93. On June 1, 2026, Plaintiff submitted to HRC a supplemental FOIA and Privacy Act request directed to two sets of records not enumerated in the April 8, 2026, consolidated request: (a) the complete Purple Heart adjudication file for the DA Form 4187 application Plaintiff submitted January 28, 2025, and that HRC denied October 23, 2025, including the Awards and Decorations Branch case, routing, and control-number records, the HRC Surgeon's Office consult and determination underlying the denial, the records identifying which version of the DA Form 2173 and which medical records were before the adjudicators, and the records reflecting the drafting, reviewing officials, and rationale of the denial; and (b) the federal records of the June 20, 2008, RCP3 engagement (the Purple Heart award orders and general orders, the supporting DA Forms 4187 and 638 and citations, the September 7, 2008, WIA spreadsheet and battalion-commander directive, the DA Form 1156 and DD Form 1380 casualty records and 9-line / MEDEVAC records, and the convoy manifest or duty roster reflecting MRAP A26). (Exhibit 30; sent by USPS Certified Mail, Return Receipt Requested, Tracking No. 9589 0710 5270 3358 2918 68, postmarked June 1, 2026.) The twenty-business-day determination period as to that supplemental request will elapse in early July 2026, during the pendency of this action; upon its lapse Plaintiff will have constructively exhausted his administrative remedies as to those records under 5 U.S.C. § 552(a)(6)(C)(i). The relief sought in subparagraphs (k) and (m) of the Prayer for Relief's HRC injunction rests on this supplemental request together with Category D of the April

8, 2026, consolidated request; to the extent any part of that relief depends solely on the June 1, 2026, supplemental request, Plaintiff seeks it only on the Rule 15(d) basis stated in the following sentence. Plaintiff acknowledges that the twenty-business-day period for the June 1, 2026, supplemental request has not lapsed as of the filing of this Complaint, and Plaintiff does not assert constructive exhaustion as to any records sought solely by that request. To the extent the Court deems exhaustion as to the supplemental request not yet ripe at the filing of this Complaint, Plaintiff reserves the right to supplement under Fed. R. Civ. P. 15(d) upon the lapse of the statutory period.

93.1. On June 9, 2026, Plaintiff submitted to HRC a further targeted supplemental FOIA and Privacy Act request, by electronic mail and by U.S. Certified Mail, Return Receipt Requested, seeking the HRC records, if any, reflecting whether HRC, or its predecessor the Reserve Components Personnel and Administration Center (RCPAC), executed Plaintiff's discharge from the Reserve of the Army following withdrawal of his Federal Recognition under AR 135-175, paragraph 2-7(c), and NGR 635-101, paragraph 6.b, and any determination of character of service connected to that discharge, including any record imposing or approving an Under Other Than Honorable Conditions characterization (Exhibit 36; USPS Certified Mail No. 9589 0710 5270 3660 6674 36). These records are material to Counts V and VI because the known record contains state and National Guard Bureau documents reflecting an Under Other Than Honorable Conditions characterization, yet no known HRC or RCPAC Reserve-of-the-Army discharge order or federal character-of-service determination imposing that characterization; under NGR 635-101 and AR 135-175 the approved board proceedings and the Federal Recognition withdrawal order were to be transmitted to the federal

records command for Reserve-of-the-Army discharge action, and the request therefore seeks records that would show whether the required federal discharge and character-of-service action exists. Consistent with Paragraph 3, this paragraph does not seek review, vacatur, or correction of any characterization; it identifies records and supports the foreseeable-harm and fee-waiver analyses. This June 9, 2026, request is not relied upon for exhaustion, the twenty-business-day determination period not having elapsed as of the filing of this Complaint; it is pleaded only to identify a pending supplemental request that overlaps with the already-exhausted April 8, 2026, HRC request as to separation records, AMHRR and iPERMS records, and NGR 635-101 transmission records (Category J), and Plaintiff reserves the right to supplement under Fed. R. Civ. P. 15(d), upon the lapse of the twenty-business-day determination period as to each, to add enforcement counts on all four of his supplemental requests, namely the June 1, 2026 requests to HRC and to NGB and the June 9, 2026 requests to HRC and to NGB.

94. HRC was required to conduct a search reasonably calculated to uncover all records responsive to the requests across all relevant record systems, including iPERMS, HRC's internal records management systems, and any correspondence files with NGB, KYARNG, and the *ABCMR relating to Plaintiff's AMHRR. Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Any Exemption 5 protection over these records is, at minimum, substantially weakened and subject to particularized in camera review and privilege-by-privilege testing: the government-misconduct doctrine substantially weakens any deliberative process claim over records documenting the Barry declaration, the deletion-reinsertion cycle, the Milliard admissions, the post-signature alteration of the physician-signed Line of Duty determination, and the October 23, 2025, Purple Heart

denial adjudicated on that altered and incomplete record; the crime-fraud doctrine, at minimum, requires particularized review of any attorney-client or work-product claim over records reflecting Milliard's concealment of material facts from federal courts; and Plaintiff's Privacy Act named-subject access right under 5 U.S.C. § 552a(d)(1) independently compels production to the extent the records are maintained in a system of records retrievable by Plaintiff's name or identifier and are not properly withheld under 5 U.S.C. § 552a(d)(5), (j), or (k). HRC cannot demonstrate foreseeable harm from disclosing the audit log of Plaintiff's own personnel file. 5 U.S.C. § 552(a)(8)(A).

95. Count V provides an independent and complete basis for compelling HRC to conduct an adequate search of all relevant record systems, produce all responsive non-exempt records, and provide a legally sufficient *Vaughn* Index for any withheld materials, regardless of any administrative posture HRC may later adopt.

## COUNT VI

### Privacy Act Violation (HRC): Denial of Named Subject's Access to His Own AMHRR Records and Audit History

96. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

97. The AMHRR is maintained by HRC in a Privacy Act system of records, designated A0600-8-104 APS and maintained in its successor system, the Integrated Personnel and Pay System-Army (IPPS-A), as identified in Paragraphs 72.4 and 72.5 above. As the named subject of every record in the AMHRR, Plaintiff holds a statutory right of direct access under 5 U.S.C. § 552a(d)(1) to all records pertaining to him maintained in that system, including the complete AMHRR, the iPERMS document manifest, the complete iPERMS electronic audit log, and all records reflecting modifications to his AMHRR

including the identity of every person who accessed, inserted, deleted, or modified any record. Plaintiff explicitly invoked this right in the April 8, 2026, request as to all thirteen categories of records sought, including Categories K, L, and M, each of which concerns records pertaining directly to Plaintiff.

98. HRC was required to respond to Plaintiff's Privacy Act access request within thirty days of receipt. 5 U.S.C. § 552a(d)(1). HRC has issued no response of any kind. This constitutes a deemed denial under 5 U.S.C. § 552a(g)(1)(B), entitling Plaintiff to bring a civil action in district court to compel HRC to permit him access to his own records. The deliberative process privilege is not among the grounds enumerated in 5 U.S.C. § 552a(d)(5) for withholding records from a named subject and cannot be applied to deny *Plaintiff access to records about himself. Martin v. Office of Special Counsel*, 819 F.2d 1181, 1184 (D.C. Cir. 1987). The Privacy Act one-way ratchet, 5 U.S.C. § 552a(t)(1) and (2), requires production if the record is accessible under either FOIA or the Privacy Act; here, both apply independently. The iPERMS audit log, the document manifest, and the modification records are plainly *"records pertaining to"* Plaintiff within the meaning of 5 U.S.C. § 552a(d)(1).

99. Count VI provides an independent and complete basis for ordering HRC to grant Plaintiff access to his complete AMHRR, the full iPERMS audit log, all document modification records, all records reflecting Barry's actions on the file, all LOR authorship records, all NGR 635-101 mandatory transmission records, all DA Form 2173 modification records (Category K), all MEB/PDES processing records (Category L), and all Congressional correspondence records (Category M), to the extent those records are maintained in a Privacy Act system of records retrievable by Plaintiff's name or identifier and are not

properly withheld under 5 U.S.C. § 552a(d)(5), (j), or (k). HRC's complete failure to respond to any of the four Privacy Act demands constitutes a violation of 5 U.S.C. § 552a(d)(1) for which this Court may order Plaintiff's access to the records and award reasonable litigation costs under 5 U.S.C. § 552a(g)(1)(B) and (g)(3)(B), and, if counsel appears or fees are otherwise legally available, attorney's fees. Plaintiff does not assert in this Count a claim for actual damages under 5 U.S.C. § 552a(g)(1)(C) or (D) and § 552a(g)(4); the present Count is limited to the access remedy.

## COUNT VII

### FOIA Violation (First Army): Constructive Denial; Failure to Respond to Records Request Documenting Ex Parte Coaching, WOFR Board Record Manipulation, and Failure to Respond to Challenge Memoranda

100. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

101. Defendant was required to determine within twenty business days whether to comply with Plaintiff's April 21, 2026, FOIA and Privacy Act request and to notify Plaintiff of its determination. 5 U.S.C. § 552(a)(6)(A). The twenty-business-day deadline elapsed on or about May 19, 2026. Defendant has not responded in any form.

102. Defendant was required to conduct a search reasonably calculated to uncover all records responsive to Plaintiff's nine categories of requests across all relevant First Army record systems. Defendant has failed to conduct any search or produce any records.

102.1. First Army's non-response is explained by what its own file would prove. Its Chief of Military Justice, MAJ Roberts, confirmed in writing on June 22, 2012, that Plaintiff's and counsel's fraud and due-process submissions were *"not considered by anyone at 1A because the uncorrectable defects of the board necessitated a new board, making his*

*claims moot,"* that he was *"not addressing his claims concerning the transcript,"* and that First Army is *"not in possession of any legal review of the original 15-6."* Production of the records sought would therefore confirm three facts from the agency's own files: (a) that the Withdrawal of Federal Recognition was initiated and adjudicated on a DA Form 1574 stripped of the Appointing Authority's *"Do NOT concur"* page while the complete form existed in the chain of transmission and, by First Army's own June 21, 2012 production to Plaintiff, in First Army's possession; (b) that the Summary of Proceedings transmitted to First Army omitted the Recorder's opening instruction that caused the very no-findings defect on which LTG Bednarek set the board aside on March 26, 2012; and (c) that the legal-sufficiency review required for an AR 15-6 investigation relied upon by higher headquarters never existed. Each fact is verifiable solely from the records sought; none implicates a deliberative judgment; and the agency's institutional interest in not confirming them is the inverse of a cognizable foreseeable harm under 5 U.S.C. § 552(a)(8)(A).

103. Count VII provides an independent and complete basis for compelling First Army to conduct an adequate search of all relevant record systems and to produce all responsive, non-exempt records. The government-misconduct and crime-fraud doctrines, at minimum, require particularized in camera review of any privilege assertion over records concerning MAJ Roberts's ex parte communications with Seitz, the chain of custody of the stripped DA Form 1574, and First Army's awareness of the Recorder's omission of his own opening statement from the Summary of Proceedings.

## COUNT VIII

### Privacy Act Violation (First Army): Denial of Named Subject's Access to WOFR Records, Challenge Memoranda, and First Army File

104. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

105. As the named subject of all records requested from First Army, Plaintiff has a Privacy Act access right under 5 U.S.C. § 552a(d)(1) to the extent the responsive records are maintained in a system of records and retrieved by Plaintiff's name, Social Security number, service number, case number, or other personal identifier within the meaning of § 552a(a)(5). To the extent the WOFR Board records, challenge memoranda, and correspondence in which Plaintiff is the named respondent or subject are maintained in applicable Army Privacy Act systems of records retrievable by such an identifier, Plaintiff's access right attaches. Plaintiff does not contend that every First Army record concerning Plaintiff is automatically a Privacy Act record; the access right is asserted only to the extent the responsive records satisfy the system-of-records and retrievability requirements, and Plaintiff acknowledges that § 552a(d)(5) excludes records compiled in reasonable anticipation of a civil action or proceeding.

106. The deliberative process privilege is categorically unavailable as a basis for withholding Plaintiff's records under Count VIII. *Savada v. DOD*, 755 F. Supp. 6, 9 (D.D.C. 1991); *Martin v. Office of Special Counsel*, 819 F.2d 1181, 1187-89 (D.C. Cir. 1987). The one-way ratchet at 5 U.S.C. § 552a(t)(1)-(2) independently requires disclosure.

107. Count VIII provides an independent basis for ordering First Army to grant Plaintiff access to his complete WOFR file, the full record of both boards, all challenge

memoranda and responses thereto, and all records of ex parte communications between First Army personnel and LTC Seitz regarding Plaintiff.

## COUNT IX

### FOIA Violation (National Guard Bureau): Failure to Conduct an Adequate Search, Produce Records, and Issue a Determination

108. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

109. Plaintiff submitted proper FOIA requests to NGB on September 29, 2025, March 18–19, 2026, and February 22, 2026 (the last a Privacy Act and FOIA demand to the NGB Inspector General for Plaintiff's complete NGB-IG file), each reasonably describing the records sought (Exhibits 28, 29, and 32). NGB is an agency within the meaning of 5 U.S.C. § 552(f)(1); in the alternative, to the extent NGB is treated not as a separate agency but as a component or joint activity of the Department of Defense under 10 U.S.C. § 10501, Defendant Department of Defense remains responsible for ensuring a lawful search for and production of NGB-controlled records. NGB failed to make a determination within twenty business days, 5 U.S.C. § 552(a)(6)(A)(i), produced no records, conducted no demonstrated search, and provided no *Vaughn* Index. Plaintiff has constructively exhausted his administrative remedies under 5 U.S.C. § 552(a)(6)(C)(i).

109.1. On June 9, 2026, Plaintiff submitted to NGB a further targeted supplemental FOIA and Privacy Act request, by electronic mail and by U.S. Certified Mail, Return Receipt Requested, seeking the NGB records, if any, identifying the source document and authority for the character-of-service notation associated with the withdrawal of Plaintiff's Federal Recognition, including the records identifying who selected, approved, entered, or recorded any character-of-service determination, and the basis for any

characterization other than Honorable or General in light of NGR 635-101, paragraph 21.c, and AR 135-175, paragraph 4-1(d) (Exhibit 37; USPS Certified Mail No. 9589 0710 5270 3660 6674 29). This request is material to Counts IX and X for the same record-identification, foreseeable-harm, and fee-waiver purposes identified in Paragraph 3, and does not seek review, vacatur, or correction of any characterization. The June 9, 2026, request is not relied upon for exhaustion, the twenty-business-day determination period not having elapsed as of the filing of this Complaint; it is pleaded only to identify a pending supplemental request that overlaps with Plaintiff's already-pleaded NGB requests concerning the federal-recognition and NGR 635-101 transmission records, and Plaintiff reserves the right to supplement under Fed. R. Civ. P. 15(d), upon the lapse of the twenty-business-day determination period as to each, to add enforcement counts on all four of his supplemental requests, namely the June 1, 2026 requests to HRC and to NGB and the June 9, 2026 requests to HRC and to NGB.

110. NGB was required to conduct a search reasonably calculated to uncover all responsive records across its relevant systems, including the Office of the Chief Counsel litigation files, the Office of Information and Privacy FOIA files, the Withdrawal of Federal Recognition and federal-recognition files, the ABCMR advisory and coordination files, the Line of Duty case file (KY-12-01060) and all versions and the audit trail of Plaintiff's DA Form 2173, the records of BG Natalie L. Lewellen, and all records reflecting any involvement of the NGB Office of General Counsel, the Office of the Deputy General Counsel - Army, or BG Lewellen in the receipt, routing, assignment, processing, or disposition of Plaintiff's FOIA and Privacy Act requests to NGB. NGB has produced nothing. The officer who, as Deputy Staff Judge Advocate of the Kentucky Army

National Guard, drafted the Hirte affidavit central to Instance 2 of the Statement now serves, since April 2025, as the Deputy General Counsel - Army of the National Guard Bureau (Exhibit 34). That an official connected to the underlying conduct has held a senior legal position within the responding agency throughout the period of NGB's silence presents an actual or apparent conflict of interest that forecloses any presumption of good faith in NGB's failure to respond and warrants a search conducted by personnel screened from that official and, if necessary, subject to this Court's supervision.

111. Count IX provides an independent and complete basis for compelling NGB to conduct an adequate search and to produce all responsive, non-exempt records, with the Exemption 5 testing required by Paragraph 23 and the Statement, Part C.

## COUNT X

**Privacy Act Violation (National Guard Bureau): Denial of Named Subject's Access**

112. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

113. As the named subject of all records requested from NGB, Plaintiff has a Privacy Act access right under 5 U.S.C. § 552a(d)(1) to the extent the responsive records are maintained in a system of records and retrieved by his name, Social Security number, case number, or other personal identifier within the meaning of § 552a(a)(5). NGB has denied that access by its non-response. The deliberative process privilege is categorically unavailable as a basis for withholding Plaintiff's own records under the Privacy Act, and the one-way ratchet at 5 U.S.C. § 552a(t)(1)-(2) independently requires disclosure.

114. Count X provides an independent basis for ordering NGB to grant Plaintiff access to his complete NGB records, including the Line of Duty case file (KY-12-01060), the

Withdrawal of Federal Recognition file, and all NGB records in which Plaintiff is the named subject, to the extent maintained in an applicable Privacy Act system of records.

## TIMELINESS; LIMITATIONS RESERVED TO THE PROPER FORUM

115. Timeliness; limitations reserved to the proper forum. Plaintiff references limitations issues only to explain why the requested records remain practically and legally relevant to the pending and anticipated proceedings identified in Paragraph 9. Plaintiff does not ask this Court to adjudicate the timeliness or merits of any Rule 60(d)(3), ABCMR, post-conviction, or personal-capacity claim, all of which are reserved to the proper forum. The FOIA and Privacy Act counts pleaded here are timely under 5 U.S.C. § 552(a)(6) and § 552a, and the relief sought is limited to the production of records and the related FOIA and Privacy Act remedies set out below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Michael Dean Vaughan respectfully requests that this Court:

116. Issue a declaration that Defendant has violated FOIA, 5 U.S.C. § 552, as to FOIA Proceeding No. 1 (ARBA, Count I), FOIA Proceeding No. 2 (USALSA, Count III), FOIA Proceeding No. 3 (HRC, Count V), and FOIA Proceeding No. 4 (First Army, Count VII), and FOIA Proceeding No. 5 (NGB, Count IX), by failing to conduct adequate searches, failing to produce responsive records, failing to provide Vaughn Indices, and failing to issue timely determinations;

117. Issue a declaration that Defendant has violated the Privacy Act, 5 U.S.C. § 552a(d)(1), as to ARBA (Count II), USALSA (Count IV), HRC (Count VI), First Army (Count VIII), and the National Guard Bureau (Count X), by failing to permit Plaintiff, the named

applicant and named individual in the relevant proceedings and the named subject of his own AMHRR, access to all records pertaining to himself;

118. Issue an injunction ordering Defendant, through ARBA, to conduct an adequate search of all relevant record systems, including the ABCMR case file system, the AMHRR, ARBA's FOIA and Privacy Act processing records, internal correspondence files, advisory opinion files, and all digital and physical systems containing materials pertaining to Docket No. AR20120006999, and to produce a sworn declaration describing each system searched, the search terms used, and the methodology employed;

119. Issue an injunction ordering Defendant, through USALSA, to conduct an adequate search of all relevant record systems, including the Army Litigation Files system, the General Litigation Branch case files, correspondence files with KYARNG, NGB, and the U.S. Attorney's Office for the Eastern District of Kentucky, and all records reflecting awareness of or response to LTC Seitz's conduct in *Vaughan v. Brigham*, and to produce a sworn declaration describing each system searched, the search terms used, and the methodology employed;

120. Issue an injunction ordering Defendant, through HRC, to: (a) conduct an adequate search of all relevant record systems, including iPERMS, HRC's internal records management systems, and all correspondence files with NGB, KYARNG, the ABCMR, and any court in which Plaintiff's military records have been at issue; (b) produce the complete current AMHRR and document manifest; (c) produce the complete iPERMS electronic audit log for Plaintiff's record (SSN ending in 0300, full SSN previously provided to HRC and available to the Court under seal if required by Fed. R. Civ. P. 5.2(d)) from January 1, 2009, to the present, in native format with full metadata; (d) produce all records reflecting

every insertion, deletion, modification, and access event on Plaintiff's AMHRR, including the identity of every person who performed each action; (e) produce all records confirming the AMHRR's contents at four legally critical dates, April 9, 2010, July 9, 2011, March 12, 2013, and March 26, 2012; (f) produce all LOR draft communications between LTC Seitz and COL Burd including all metadata; (g) produce all records establishing whether the NGR 635-101, paragraph 6(a)(3), mandatory transmission obligation was fulfilled as to both WOFR board proceedings; (h) produce all records responsive to Category K of the April 8, 2026, consolidated request, including all versions of DA Form 2173 pertaining to Plaintiff, the complete iPERMS audit log for that document, all records identifying who modified the form after CPT Garbrecht's signature and under what authority, and all records reflecting disability screening at the March 22, 2009, demobilization; (i) produce all records responsive to Category L, including all MEB initiation, referral, diversion, and denial records from January 2009 through July 2013, records of MEB Coordinator Robbins's February 11, 2013, initiation, COL Jones's February 12, 2013, diversion, LTC Seitz's February 14, 2013, JAG-office lockdown directive, and all records reflecting any determination that Plaintiff was not eligible for MEB/PDES referral; (j) produce all records responsive to Category M, including all KYARNG, NGB, and HRC communications with the office of Senator Rand Paul regarding Plaintiff, all records identifying who drafted and approved those responses, and all records reflecting whether any official reviewed Plaintiff's medical records or VA rating before certifying the accuracy of those responses; (k) produce the complete Purple Heart adjudication file for the DA Form 4187 application Plaintiff submitted to the Awards and Decorations Branch on January 28, 2025, and that HRC

denied on October 23, 2025, including the Awards and Decorations Branch case and routing records, the HRC Surgeon's Office consult and determination underlying the denial, all records identifying which version of the DA Form 2173 (the original physician-signed version or the altered version) and which medical records were before the Awards and Decorations Branch and the Surgeon's Office, and all records reflecting the drafting, the reviewing officials, and the rationale of the October 23, 2025, denial; and (l) produce a sworn declaration describing each record system searched, the search terms used, and the methodology employed; and (m) produce all federal Army records arising from the June 20, 2008, RCP3 engagement (Task Force Workhorse / 201st Engineer Battalion; vicinity grid 42SWB2282061904), including all Purple Heart award orders and general orders, the supporting DA Forms 4187 and 638 and award citations, the September 7, 2008, *"WIA spreadsheet"* and the battalion-commander directive referencing it, the DA Form 1156 casualty feeder cards, DD Form 1380 cards, and 9-line / MEDEVAC records for that engagement, and the convoy manifest or duty roster reflecting personnel-to-vehicle assignments including MRAP A26, with Plaintiff's consent to redaction of third-party identifiers and protected medical information under Exemption 6 and the Privacy Act;

121. Issue an injunction ordering Defendant to produce all responsive, non-exempt records, and all reasonably segregable non-exempt portions of any partially exempt record under 5 U.S.C. § 552(b), within thirty days of the Court's order, with any redactions justified document-by-document in the *Vaughn* Index ordered below, under both FOIA and the Privacy Act, as to all five proceedings (ARBA, USALSA, HRC, First Army, and NGB),

including segregated production of all non-exempt portions of any partially withheld record;

122. Issue an injunction ordering Defendant to produce a legally sufficient, document-by-document *Vaughn* Index for any records withheld in whole or in part from either proceeding, identifying for each: (a) a description sufficient to allow challenge of the withholding; (b) the document's date, author, and recipient; (c) the specific FOIA exemption claimed; (d) a particularized explanation of the foreseeable harm from disclosure as required by 5 U.S.C. § 552(a)(8)(A); (e) for any Exemption 5 withholding, an explanation of why the asserted privilege applies notwithstanding Plaintiff's crime-fraud, government-misconduct, *Accardi*, and Privacy Act access arguments; and (f) the name and title of the official responsible for each withholding determination;

123. Declare that any denial of a fee waiver in connection with any request at issue was improper and that Plaintiff is entitled to fee waiver treatment under 5 U.S.C. § 552(a)(4)(A)(iii), as the requested records significantly contribute to public understanding of government operations involving military recordkeeping integrity, federal *Touhy* compliance, the Army's litigation-authority framework under 28 U.S.C. § 516, and the integrity of military administrative-board processing; the fee-waiver provision is to be liberally construed in favor of waivers for noncommercial requesters, Judicial Watch, *Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003); *Cause of Action v. FTC*, 799 F.3d 1108, 1115–16 (D.C. Cir. 2015);

124. Award Plaintiff reasonable litigation costs under 5 U.S.C. § 552(a)(4)(E) and 5 U.S.C. § 552a(g)(3)(B), including for any post-filing voluntary production pursuant to the OPEN Government Act of 2007, 5 U.S.C. § 552(a)(4)(E)(ii), and, if counsel appears in this

action or attorney's fees are otherwise legally available to Plaintiff, attorney's fees, with a finding that Defendant's withholding lacked a reasonable basis in law given the documented pattern of regulatory violations and the substantial showing that responsive records would tend to confirm the misconduct documented in the Factual Allegations;

125. To the extent the Court deems it warranted on the present record, issue a written finding under 5 U.S.C. § 552(a)(4)(F) that the circumstances surrounding Defendant's withholding raise questions whether agency personnel acted arbitrarily or capriciously with respect to the withholding, given the documented pattern of regulatory violations and the substantial showing that the withholding had the foreseeable effect of impairing Plaintiff's ability to uncover, challenge, and timely present evidence concerning misconduct, procedural irregularities, and false or misleading official actions documented in the Factual Allegations; and certify the matter to the Office of Special Counsel for the disciplinary proceeding contemplated by § 552(a)(4)(F);

126. To the extent relevant to any issue properly before the Court, issue a finding that Plaintiff has acted with reasonable diligence in pursuing his federal FOIA and Privacy Act rights from no later than July 5, 2025, through the date of this Court's final order, and that all delay in production of records responsive to Plaintiff's requests is attributable to Defendant's failure to comply with the statutory time limits of 5 U.S.C. § 552(a)(6)(A) and § 552a(d)(1) rather than to any failure of diligence by Plaintiff;

127. To the extent relevant to the relief requested, issue a finding that the records sought are time-sensitive because they bear on the pending and anticipated downstream legal proceedings identified in paragraph 9 of this Complaint, and that the continuing absence of those records during the pendency of those proceedings is the direct foreseeable

consequence of Defendant's failure to comply with the statutory time limits of 5 U.S.C. § 552(a)(6)(A) and § 552a(d)(1);

128. Retain jurisdiction to supervise Defendant's compliance with any orders herein and to conduct in camera review of withheld documents if necessary to resolve any exemption dispute, pursuant to 5 U.S.C. § 552(a)(4)(B) and *United States v. Zolin*, 491 U.S. 554 (1989); and

129. Issue an injunction ordering Defendant, through First Army, to conduct an adequate search of all relevant record systems for records responsive to Plaintiff's April 21, 2026, FOIA and Privacy Act request, produce all responsive non-exempt records, the search to expressly include the original audio recordings of both Withdrawal of Federal Recognition board hearings, the complete board packets as transmitted, the challenge memoranda and the Recorder's response thereto, the LTG Bednarek decisional file, and any AR 15-6 legal-sufficiency review and provide a legally sufficient *Vaughn* Index for any withheld records, with particularized in camera review and privilege-by-privilege testing of any Exemption 5 assertion in light of the crime-fraud and government-misconduct doctrines;

130. Issue an injunction ordering Defendant National Guard Bureau to conduct an adequate search of all relevant record systems for records responsive to Plaintiff's September 29, 2025, and March 18–19, 2026, FOIA and Privacy Act requests, including the Office of the Chief Counsel litigation files, the Office of Information and Privacy FOIA files, the Withdrawal of Federal Recognition and federal-recognition files, the ABCMR advisory and coordination files, the Line of Duty case file (KY-12-01060) together with all versions and the complete audit trail of Plaintiff's DA Form 2173, the records of BG

Natalie L. Lewellen, and all records reflecting any involvement of the NGB Office of General Counsel, the Office of the Deputy General Counsel - Army, or BG Lewellen in the receipt, routing, assignment, processing, or disposition of Plaintiff's requests, produce all responsive non-exempt records, and provide a legally sufficient *Vaughn* Index for any withheld records, with particularized in camera review and privilege-by-privilege testing of any Exemption 5 assertion in light of the crime-fraud, government-misconduct, and *Accardi* doctrines; and

131. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

Michael Dean Vaughan, Pro Se
500 Leo Drive, Hamilton, Ohio 45013
Cell: (859) 743-1355
Email: warhacker6@gmail.com
Dated: June 15, 2026

### NOTICE OF SERVICE PURSUANT TO FED. R. CIV. P. 4(i)

Pursuant to Fed. R. Civ. P. 4(i), Plaintiff will serve process upon: (1) the United States Attorney for the Southern District of Ohio (or designee), by delivery to the office or to the civil process clerk; (2) the Attorney General of the United States, Washington, D.C., by registered or certified mail; and (3) each Defendant agency, the Secretary of the Army (for the Department of the Army), the General Counsel of the Department of Defense, and the Chief, National Guard Bureau, by registered or certified mail, as Fed. R. Civ. P. 4(i)(2) requires for service on a United States agency. All service will be completed within ninety days of filing as required by Fed. R. Civ. P. 4(m).

**CERTIFICATION PURSUANT TO 28 U.S.C. § 1746**

I, Michael Dean Vaughan, hereby certify under penalty of perjury pursuant to 28 U.S.C. § 1746 that the factual allegations of the foregoing Complaint that are based on my personal knowledge are true and correct, and that the factual allegations based on documents are accurately described to the best of my knowledge, information, and belief. I do not, by this certification, attest to or verify legal arguments, legal characterizations, or legal conclusions set forth in the Complaint.

Michael Dean Vaughan, Pro Se
500 Leo Drive, Hamilton, Ohio 45013
Cell: (859) 743-1355
Email: warhacker6@gmail.com
Dated: June 15, 2026

## EXHIBIT LIST

The following documents are provided for reference and future record management purposes only. No exhibits are attached to this Complaint. The documents are in Plaintiff's possession and will be lodged with the Court upon request, submitted if ordered, or submitted with appropriate motion or summary-judgment briefing.

## EXHAUSTION EXHIBITS

Exhibit 1: USPS Certified Mail Tracking Confirmation, ARBA Administrative Appeal, Tracking No. 9589 0710 5270 3358 2897 11, delivered March 9, 2026, Arlington, Virginia.

Exhibit 2: USPS Certified Mail Tracking Confirmation, USALSA Original FOIA Request, Tracking No. 9589 0710 5270 3358 2894 83, delivered February 24, 2026, at 8:05 a.m., Fort Belvoir, Virginia.

Exhibit 3: USPS Certified Mail Tracking Confirmation, USALSA Supplemental Privacy Act Letter, Tracking No. 9589 0710 5270 3358 2897 35, delivered March 5, 2026, at 8:32 a.m., Fort Belvoir, Virginia.

Exhibit 4: Freedom of Information Act Request to USALSA, dated February 19, 2026, wet-ink signed original.

Exhibit 5: Supplemental Privacy Act Letter to USALSA, dated March 2, 2026, wet-ink signed original.

Exhibit 6: ARBA Administrative Appeal, mailed February 25, 2026, wet-ink signed original.

Plaintiff reserves the right to submit substantive documentary materials supporting the factual allegations in paragraph 37 in conjunction with responses to dispositive motions, in support of in camera review under 5 U.S.C. § 552(a)(4)(B), or upon the establishment of electronic filing capability. All such materials are in Plaintiff's possession and were authenticated through court-supervised criminal discovery in *Commonwealth v. Vaughan*, Case No. 14-CR-204.

## HRC FOIA EXHIBITS

Exhibit 7: USPS Certified Mail Tracking Confirmation, HRC FOIA/Privacy Act Request, Tracking No. 9589 0710 5270 3358 2918 37, delivered April 10, 2026, at 9:08 a.m., Fort Knox, Kentucky.

Exhibit 8: FOIA and Privacy Act Request to HRC, dated April 8, 2026, wet-ink signed original.

## FIRST ARMY FOIA EXHIBITS

Exhibit 9: USPS Certified Mail Tracking Confirmation, First Army FOIA/Privacy Act Request, Tracking No. 9589 0710 5270 3358 2835 97, delivered April 21, 2026, at 12:10 p.m., Rock Island, Illinois.

Exhibit 10: FOIA and Privacy Act Request to Headquarters, First United States Army, dated April 16, 2026, wet-ink signed original.

## HRC LINE OF DUTY AND PURPLE HEART EXHIBITS

Exhibit 11: Original physician-signed DA Form 2173, CPT Kendra Garbrecht, O.D., Fort McCoy SRC, March 2, 2009 (right-eye vision loss and headaches; PERMANENT PARTIAL; injury *"IS likely"* to result in a claim).

Exhibit 12: NGB-approved (altered) DA Form 2173 and NGB Line of Duty memorandum, January 7, 2013 (Ireland ACH; Post-Concussive Headache Syndrome; TEMPORARY; injury *"IS NOT likely"* to result in a claim).

Exhibit 13: NGB Line of Duty case-tracking audit log, case KY-12-01060, August 25, 2012 to August 28, 2013 (Epperson workflow initiation; Frodge unit-commander comments).

Exhibit 14: Professional employment record (LinkedIn profile) of Kendra Garbrecht, O.D., establishing the Fort McCoy optometry tenure of August 2008 – December 2011.

Exhibit 15: DA Form 4187 (Personnel Action) requesting award of the Purple Heart, signed by Plaintiff January 27, 2025, with supporting remarks.

Exhibit 16: HRC Awards and Decorations Branch correspondence, January 28, 2025; February 6, 2025; and July 1-2, 2025, acknowledging receipt and confirming review by the HRC Surgeon's Office.

Exhibit 17: Final HRC Awards and Decorations Branch denial of the Purple Heart, signed by MAJ Francisco H. Bongio II, October 23, 2025, directing appeal to the ABCMR.

Exhibit 18: In-theater Military Acute Concussion Evaluation (MACE) documenting a blast-mechanism concussion with visual disturbances.

Exhibit 19: September 16, 2008, Afghanistan prescription for headache/migraine medication, and the corresponding VA medication record.

Exhibit 20: VA rating decision, February 19, 2010, granting service connection for tinnitus and traumatic-brain-injury residuals including blurred and diminished vision, effective March 23, 2009; and Fort McCoy ophthalmology record, February 22, 2009 (right-eye visual impairment; possible vascular event).

Exhibit 21: Seitz-Frodge email exchange regarding Plaintiff's Line of Duty, August 28, 2013 (Seitz solicitation; Frodge reply, *"I was in the truck he was riding in and can assure you there was no RPG hit"*).

Exhibit 22: Plaintiff's sworn statement (DA Form 2823), February 23, 2009, describing the June 20, 2008, RPG ambush of RCP3 and Plaintiff's blast injury aboard MRAP A26.

Exhibit 23: Plaintiff's statement in support of the Purple Heart application, January 27, 2025.

Exhibit 24: Task Force Workhorse SIGACT After-Action Review (briefed June 23, 2008; SECRET // REL TO USA, ISAF markings) and the Workhorse Suspense and SIGACTs Tracker, produced to Plaintiff in the June 18, 2014, criminal discovery (Exhibit 27); current classification status neither confirmed nor denied.

Exhibit 25: Email from LTC Scott C. Thomas to LTC Dylan F. Seitz, February 25, 2014, forwarding the Workhorse After-Action Review and SIGACTs Tracker in connection with Plaintiff's criminal trial.

Exhibit 26: Motion for Memorandum of Declassification, *Commonwealth v. Vaughan*, No. 14-CR-00204 (Kenton Cir. Ct.), April 6, 2015, concerning the classified document produced in discovery.

Exhibit 27: Commonwealth's Supplemental Discovery Response, *Commonwealth v. Vaughan*, No. 14-CR-204 (Kenton Cir. Ct., June 18, 2014), producing a CD of scanned military records and a DVD Outlook PST file (chain of custody for the Task Force Workhorse records and command emails).

## NATIONAL GUARD BUREAU FOIA EXHIBITS

Exhibit 28: FOIA/Privacy Act request dated September 29, 2025, transmitted the same day to both the NGB and HRC FOIA offices and to the Kentucky Army National Guard, seeking all versions and the audit trail of the DA Form 2173 (NGB case KY-12-01060) and forensic verification of the electronically applied physician signature.

Exhibit 29: FOIA/Privacy Act request to NGB, March 18-19, 2026 (U.S. Certified Mail), seeking NGB's records of the July 9, 2011, and March 12, 2013, Withdrawal of Federal Recognition boards, the legal-sufficiency and ABCMR coordination records (Docket No. AR20120006999), the NGB-OIP FOIA files, and the records of BG Natalie L. Lewellen.

Exhibit 30: Supplemental FOIA/Privacy Act request to HRC, June 1, 2026, for the Purple Heart adjudication file (application January 28, 2025; denial October 23, 2025) and the June 20, 2008, RCP3 engagement records; USPS Certified Mail Tracking No. 9589 0710 5270 3358 2918 68.

Exhibit 31: Two-part supplemental FOIA/Privacy Act request to NGB, June 1, 2026 (Part I, Line of Duty determination and signatures; Part II, NGB Office of Chief Counsel litigation records, Inspector General inquiries, prior FOIA history, and federal-recognition records); USPS Certified Mail Tracking No. 9589 0710 5270 3358 2918 51; Return Receipt No. 9590 9402 9666 5199 4768 59.

Exhibit 32: Privacy Act and FOIA demand to the NGB Inspector General (NGB-IGA), February 22, 2026, for Plaintiff's complete NGB-IG file for every IG complaint, inquiry, referral, or contact from 2009 to present (including the December 19, 2013, NGB-IGA inquiry).

Exhibit 33: FOIA request to USALSA, February 19, 2026 (wet-ink signed; U.S. Certified Mail, delivered February 24, 2026), seeking records of LTC Seitz's unauthorized federal-court filings, fraud on the court, and *Touhy* violations, and asserting the crime-fraud, government-misconduct, and *Accardi* exceptions to Exemption 5.

Exhibit 34: NGB Office of General Counsel biography of BG Natalie L. Lewellen, Deputy General Counsel - Army (as of May 12, 2025; retrieved June 1, 2026), reflecting her service as Deputy Staff Judge Advocate, KYARNG, September 2010 to December 2013, and her assumption of the Deputy General Counsel - Army position in April 2025.

Exhibit 35: Focused supplemental FOIA/Privacy Act request to NGB (Line of Duty case KY-12-01060), June 1, 2026, seeking every version of the DA Form 2173/DD Form 261, the case-tracking and electronic audit trail, the signature-authentication and metadata records for the

physician-certification block, and the AR 600-8-4 / AR 40-66 compliance records; USPS Certified Mail Tracking No. 9589 0710 5270 3660 6674 74.

Exhibit 36: Targeted supplemental FOIA/Privacy Act request to HRC, June 9, 2026, seeking the HRC/RCPAC records reflecting execution of the Reserve-of-the-Army discharge following withdrawal of Federal Recognition (AR 135-175, paragraph 2-7(c)) and any character-of-service determination, on a produce-or-certify basis; USPS Certified Mail Tracking No. 9589 0710 5270 3660 6674 36.

Exhibit 37: Targeted supplemental FOIA/Privacy Act request to NGB, June 9, 2026, seeking the records identifying the source and authority for the character-of-service notation on the withdrawal of Federal Recognition (12 March 2013 board; CNGB memorandum 16 July 2013; NGB Special Orders 186 AR), on a produce-or-certify basis; USPS Certified Mail Tracking No. 9589 0710 5270 3660 6674 29.

Exhibit 38: USALSA determination letter, FOIA No. FA-26-0002, March 12, 2026 (COL Philip M. Staten).

Exhibit 39: Plaintiff's Privacy Act Appeal to the Office of the General Counsel, Secretary of the Army, March 17, 2026, with USPS Certified Mail receipt (Tracking No. 9589 0710 5270 3358 2897 28).

Exhibit 40: Plaintiff's Challenge to the Requests 5–10 Particularity Objection, Supplemental Reformulation, and Fee-Waiver Appeal, March 17, 2026, with USPS Certified Mail receipt (Tracking No. 9589 0710 5270 3358 2835 73).

Exhibit 41: OTJAG FOIA Team email confirming receipt of both March 17, 2026 submissions, March 26, 2026.

Exhibit 42: OTJAG FOIA Team emails to Plaintiff (from usarmy.pentagon.hqda-otjag.mbx.otjaghqfoiarequest@army.mil), April 3 and April 22, 2026 (custodian-address inquiries; *"We were able to locate LTC Sam Morris"*), with Plaintiff's June 11, 2026 written reply in the same thread.

Exhibit 43: USALSA determination letter, FOIA No. FA-26-0002, June 8, 2026 (COL Philip M. Staten) (*"no records"* as to all ten categories).

Exhibit 44: Plaintiff's FOIA and Privacy Act Appeal of the June 8, 2026 determination, filed through USALSA to the Office of the General Counsel, June 12, 2026, with certified-mail proof.

Exhibit 45: Plaintiff's first-party Privacy Act and FOIA request for the complete FA-26-0002 administrative processing file, with preservation demand, June 12, 2026, with certified-mail proof.

Exhibit 46: Email chain, *"Re: Brief & Letterhead (UNCLASSIFIED),"* September 14, 2010, between LTC Dylan Seitz (dylan.seitz@us.army.mil) and *"COL S"* (jsawy10578@aol.com / jsawy10578@aim.com), transmitting the AR 15-6 legal review, the action memo, the draft Motion for Exemption from Electronic Filing, and a proposed order.

Exhibit 47: Draft *"United States Army's Motion to be Exempted from Electronic Filing Requirements"* (Motion_to_exempt.docx) and proposed Order (order.docx), *Vaughan v. Brigham*, No. 3:10-cv-00005-DCR, prepared for LTC Seitz's signature.

Page 96 of 96

Exhibit 48: Identity-corroboration materials for COL James M. Sawyers, JA (held and available on request): United States v. Neeley, ARMY 20020971 (A. Ct. Crim. App.) (LTC James M. Sawyers, JA, as counsel); 2006 Congressional Record nomination of James M. Sawyers to Colonel; and public professional-profile records.

All Exhibit 11–20 materials are in Plaintiff's possession; the contemporaneous Army and medical records were authenticated through court-supervised criminal discovery in *Commonwealth v. Vaughan*, Case No. 14-CR-204, and through Plaintiff's own military and VA medical records.