**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

MICHAEL DEAN VAUGHAN,                    Case No. 1:26-cv-589

     Plaintiff,                              District Judge Jeffery P. Hopkins

v.                                       Magistrate Judge Stephanie K. Bowman

DEPARTMENT OF DEFENSE, et al.,
     Defendants.

---

**PLAINTIFF'S URGENT MOTION TO ADD ONE CONDITION TO THE JULY 27, 2026 STAY ORDER BASED ON A CIRCUMSTANCE ARISING AFTER ITS ENTRY, AND FOR EXPEDITED CONSIDERATION**

---

## I.    INTRODUCTION AND SCOPE

Plaintiff Michael Dean Vaughan respectfully moves for a single additional condition on the stay entered July 27, 2026 (the "Order"). For good cause under S.D. Ohio Civ. R. 7.1(b)(3), he asks the Court to treat this as an urgent motion and to set the abbreviated briefing schedule requested in Part VIII.

Plaintiff does not ask the Court to vacate or shorten the stay, to lift it as to any claim, count, or party, or to revisit any determination made in the Order. The sixty-day period and the September 25, 2026, expiration date would remain exactly as entered.

Plaintiff asks only that Defendants complete priority processing of specified items from three already-submitted requests: the June 9, 2026 NGB request concerning the source and authority for the disputed character-of-service notation; the June 9, 2026 HRC request

concerning the federal discharge and any character-of-service determination; and Category L, Items 45 through 47, of Plaintiff's April 8, 2026 HRC request concerning MEB/PDES initiation, referral, diversion, denial, and any determination that referral was not required. The priority items are identified in Part IV. Plaintiff does not seek accelerated processing of the remaining items in any request.

For each priority item, Plaintiff asks Defendants, on or before August 21, 2026, to produce responsive nonexempt records and reasonably segregable portions, identify any withholding or referral, or, if no responsive record is located, provide a declaration under 28 U.S.C. § 1746 describing the search and its result. Rolling production would be permitted.

Plaintiff does not seek judicial review of a denied request for statutory expedited processing under 5 U.S.C. § 552(a)(6)(E), and he has made no such administrative request. He seeks modification of an existing stay based on a circumstance arising after the Order, under the Court's authority to impose reasonable case-management conditions on a stay it has entered.

The ground for the motion is a circumstance that arose on July 28, 2026, the day after the Order was entered. It was not before the Magistrate Judge when the Order was issued. It is also not addressed in Plaintiff's pending Rule 72(a) objection (Doc. 8), which was filed before Plaintiff received the material charging document, or in his memorandum in response to Defendants' motion (Doc. 10), which was prepared before the Order issued.

## II.    THE CIRCUMSTANCE THAT AROSE AFTER THE ORDER

The Court entered the Order on Monday, July 27, 2026, granting in part Defendants' Motion to Stay (Doc. 7).

On Tuesday, July 28, 2026, Plaintiff's federal credential and facility access were collected at his place of employment. On the same date, the Department of Veterans Affairs Personnel Security Adjudication Center issued a Proposed Fitness Action. Plaintiff received the charging document on July 30, 2026. The notice proposes an unfavorable fitness determination and debarment for up to three years. Plaintiff remains employed but is on unpaid administrative leave pending the outcome. The Proposed Fitness Action contains information about Plaintiff protected under the Privacy Act, 5 U.S.C. § 552a, and Plaintiff has not filed it on the public docket. Its relevant contents are established by the accompanying declaration, and Plaintiff will provide the document to the Court in camera or under seal if the Court so directs.

Charges 2 and 4 of the Proposed Fitness Action concern the same December 2013 incident and resulting conviction. Neither charge expressly identifies Plaintiff's Under Other Than Honorable Conditions characterization as an independent basis for the proposed action. The incident occurred approximately five months after Plaintiff's July 2013 separation. The notice permits Plaintiff to submit documentary evidence and identifies the circumstances surrounding the conduct as a consideration bearing on the determination. Vaughan Decl. ¶¶ 4-6. The separation record and the contemporaneous medical-processing record are therefore material to mitigation and to an accurate account of the circumstances preceding the conduct.

Plaintiff contends that, before separation, he requested disability processing and a qualified PTSD/TBI evaluation; that an MEB/PDES process was initiated but did not result in an MEB or the requested evaluation; and that he was separated without those processes being completed. Plaintiff further contends that applicable Army medical-evaluation and disability-processing requirements made the requested records relevant to the circumstances of his separation. The Court need not determine the applicability or violation of any such requirement

to decide this motion. The requested records would show what was requested, initiated, reviewed, diverted, denied, deemed unnecessary, or left incomplete.

Plaintiff does not offer the military medical context to deny the conviction or excuse the underlying conduct. He seeks the records to present mitigation accurately, including the timing and circumstances of the separation, while accepting responsibility for the conduct addressed in Charges 2 and 4.

Plaintiff's written answer is due August 28, 2026. Vaughan Decl. ¶ 10. The notice identifies no hearing, discovery, opportunity to examine witnesses, or administrative appeal. Plaintiff's written response is the only identified opportunity for him to place evidence and argument before the deciding official. The stay in this action expires September 25, 2026, twenty-eight days after the response deadline.

The requested August 21 production date is seven calendar days before the administrative response is due. Plaintiff needs that interval to review any production, compare it with the military records and the charging document, determine how the source of the character-of-service notation and the MEB/PDES processing history bear on mitigation, organize the records as exhibits, and prepare an accurate written response. Production on or immediately before August 28 would not provide a meaningful opportunity to use the records.

Plaintiff alleges no impropriety by any person in connection with the timing of these events. The Department of Veterans Affairs is not a party to this action, and the background investigation underlying the fitness action closed on May 5, 2026, before this suit was filed. Plaintiff recites the sequence solely because it establishes when the prejudice became immediate and time-limited.

### III.     THE PRIORITY RECORDS ARE ALREADY REQUESTED AND WITHIN THE PLEADED CLAIMS

The April 8, 2026, HRC request is the administrative request underlying Counts V and VI. It expressly includes Category L, Items 45 through 47, seeking records of MEB initiation, referral, diversion, or denial; disability-processing screening; and any determination that Plaintiff was ineligible for or did not require MEB/PDES referral. The Complaint specifically pleads Category L and requests production of those records. Compl. ¶¶ 91-92, Doc. 1, PAGEID 71-72; Prayer for Relief, PAGEID 85-86.

The June 9 requests likewise are not new matters first disclosed through this motion. The Complaint identifies the HRC request as Exhibit 36 and explains its overlap with Counts V and VI. Compl. ¶ 93.1, Doc. 1, PAGEID 74-75. The Complaint identifies the NGB request as Exhibit 37 and explains its overlap with Counts IX and X. Compl. ¶ 109.1, Doc. 1, PAGEID 81-82.

The April 8 HRC request was delivered on April 10, 2026, and its determination period elapsed before this action was filed. HRC acknowledged the request and assigned reference number FA-26-1314 but has not produced the Category L priority records. As to the June 9 requests, Plaintiff stated at filing that he was not yet relying on them for exhaustion because their determination periods had not elapsed, and he reserved supplementation under Federal Rule of Civil Procedure 15(d). Those periods have since elapsed. Plaintiff has received no substantive determination or production addressing the priority items. Vaughan Decl. ¶¶ 12-24.

The April 8 MEB/PDES items are directly pleaded in Counts V and VI. The June 9 HRC priority items overlap the already-pleaded demand for separation records, AMHRR and iPERMS records, and NGR 635-101 transmission records. The NGB priority items overlap the already-

pleaded demand for the Withdrawal-of-Federal-Recognition file, federal-recognition records, and records concerning the creation and maintenance of NGB separation documents. This motion therefore seeks a case-management condition directed to records already identified in the Complaint and already within the subject matter of the stayed action.

No supplemental pleading is necessary for the April 8 Category L records because they are expressly pleaded in Counts V and VI. If the Court concludes that a supplemental pleading is a prerequisite to a condition expressly referencing the June 9 requests, Plaintiff alternatively requests leave under Rule 15(d) to file a narrowly limited supplemental pleading stating that those statutory determination periods have elapsed and describing the post-Complaint events established by the accompanying declaration. Alternatively, the Court may frame the June 9 portion of the condition as priority processing of the overlapping record categories already placed at issue in Counts V, VI, IX, and X.

## IV.  THE PRIORITY ITEMS ARE NARROW AND COMPLEMENTARY

The priority groups address complementary parts of the record Plaintiff needs for the fitness response. The NGB and June 9 HRC items address the source, authority, and federal execution of the disputed character-of-service notation. The April 8 HRC Category L items address whether disability processing and a PTSD/TBI evaluation were initiated, redirected, denied, deemed unnecessary, or left incomplete before the July 2013 separation.

1.  NGB priority items. Plaintiff seeks priority processing of Items 2, 3, 4, 5, 7, and 8 of the June 9 NGB request. He also seeks only the following limited portion of Item 1: the NGB Staff Summary Sheet, control number 1304366; the July 16, 2013, CNGB memorandum;

the NGB-JA memorandum; and any tab or portion of the associated action package that addresses character of service.

2. HRC character-of-service priority items. Plaintiff seeks priority processing of Items 2 through 6, 8, and 9 of the June 9 HRC request.

3. HRC MEB/PDES priority items. Plaintiff seeks priority processing of Category L, Items 45 through 47, of the April 8 HRC request. Those items seek: (a) records of any MEB initiation, referral, diversion, or denial from January 2009 through July 2013, including the February 2013 initiation and routing events identified in the request; (b) records reflecting whether Plaintiff was screened for disability processing and what disability prognosis was used; and (c) any determination that Plaintiff was not eligible for or did not require MEB/PDES referral, including the deciding official and regulatory basis.

The remaining items in the requests remain pending administratively, but Plaintiff does not ask the Court to accelerate them. This motion does not seek expedited processing of complete agency files, all legal-review records, all inter-component communications, historical transmittal records, or Plaintiff's complete medical or treatment file. Nor does it ask the Court to adjudicate whether any official violated any statutory or regulatory medical-evaluation requirement. It seeks only the existing records responsive to the specifically identified priority items.

## V. THE REQUESTED CONDITION IS MODEST AND CREATES A USABLE RECORD

Plaintiff does not ask any component to create a substantive record, issue a new characterization or medical decision, or concede the legal effect of an unsuccessful search. If no

responsive record is located, Plaintiff requests a declaration from an official familiar with the search. The declaration should identify the offices, repositories, and electronic systems searched, briefly describe the search methods used, and state the result for each priority item.

That request tracks the showing this Circuit already uses to evaluate a FOIA search. "At all times the burden is on the agency to establish the adequacy of its search," and in discharging that burden "the agency may rely on affidavits or declarations that provide reasonable detail of the scope of the search." Rugiero v. United States Department of Justice, 257 F.3d 534, 547 (6th Cir. 2001). Where a declaration "fails to describe the methods of its search" and states only that the agency searched its indices, the response "verges on the impermissibly conclusory." Id. at 548. Rugiero addressed components that located no responsive records, which is the same posture in which Plaintiff asks that a no-record result be explained rather than merely announced.

For each priority item, the condition would require one of four concrete results by August 21, 2026:

1. Production of all responsive nonexempt records and all reasonably segregable portions;

2. Identification of any responsive record withheld in whole or in part and the exemption or other authority relied upon;

3. Identification of any referral or consultation, including the receiving component and the date of referral; or

4. If no responsive record was located, a declaration under 28 U.S.C. § 1746 identifying the offices, repositories, and systems searched, briefly describing the search methods, and stating the result.

Production could be made on a rolling basis. The condition would not adjudicate any exemption, waive any party's position concerning the ultimate adequacy of a search, or require creation of a new substantive agency record.

Courts addressing agency requests for delay in FOIA cases have paired that delay with concrete processing requirements. In Buc v. Food & Drug Administration, 762 F. Supp. 2d 62, 73 (D.D.C. 2011), the court denied an Open America stay of approximately seventeen and one-half months and directed the agency to begin processing immediately, produce on a rolling basis, and complete production by a date certain. In CareToLive v. U.S. Food & Drug Administration, No. 2:08-cv-005, 2008 WL 2201973, at *9 (S.D. Ohio May 22, 2008), the court conditionally granted a stay, reduced the requested twenty-month period to ten months, required an affidavit containing an updated and accurate processing estimate, and fixed an outer limit in advance. Those decisions arose in a different procedural posture and do not control the relief requested here, but they confirm that a court addressing FOIA delay may impose concrete, time-limited processing requirements. Plaintiff's requested production scope is narrower, because it is confined to specifically identified priority items rather than to the requests as a whole.

## VI.   LEGAL STANDARD

Because the July 27 Order adjudicates neither all claims nor all parties' rights and liabilities, it remains subject to revision before entry of final judgment. Fed. R. Civ. P. 54(b).

The party seeking a stay bears the burden "to show that there is pressing need for delay, and that neither the other party nor the public will suffer harm from entry of the order." Ohio Environmental Council v. U.S. District Court, 565 F.2d 393, 396 (6th Cir. 1977). A court should be particularly hesitant when a stay disrupts a statutory or administrative timetable, and a stay

must be framed so that its force "will be spent within reasonable limits, so far at least as they are susceptible of prevision and description." Id. (quoting Landis v. North American Co., 299 U.S. 248, 257 (1936)).

The Supreme Court has also recognized that a stay may require reassessment in light of developments arising after its entry. Because a ruling entered on an earlier record "would have little relation to present day realities," the Court explained that "[t]o bring about a fitting correspondence between rulings and realities, there must be a new appraisal of the facts by the court whose function it is to exercise discretion, and an appraisal in the light of the situation existing and developed at the time of the rehearing." Landis, 299 U.S. at 258.

Those principles do not mean the Order was wrongly entered. They matter here because harm to the opposing party is relevant to the framing of a stay, and the immediate employment-related prejudice identified in Part II arose the day after the Order issued and was therefore not part of the record on which the Order rests. The modest course is to adjust the stay's conditions to account for that newly arisen prejudice while leaving the stay itself intact.

## VII.    RELATIONSHIP TO THE PENDING RULE 72(a) OBJECTION

Plaintiff's objection under Federal Rule of Civil Procedure 72(a) remains pending (Doc. 8). That objection presents a separate procedural question concerning entry of the stay before the response period under S.D. Ohio Civ. R. 7.2(a)(2) had expired, and requests conditions on that ground.

This motion does not seek to relitigate the objection. The objection concerns what the record would have contained had the response period run. This motion concerns a fact that arose after both the Order and the objection and could not have been presented in either. The relief

requested here does not depend on how the objection is resolved. If the Court prefers to consider this motion with the objection, Plaintiff has no objection, subject to the timing concern described below.

## VIII.  URGENT AND EXPEDITED CONSIDERATION

Under S.D. Ohio Civ. R. 7.2(a)(2), an opposition would ordinarily be due twenty-one days after service, and a reply fourteen days after service of the opposition. That ordinary schedule would extend beyond Plaintiff's August 28 administrative deadline and would make the requested relief ineffective.

For good cause under S.D. Ohio Civ. R. 7.1(b)(3), Plaintiff requests expedited consideration and asks the Court to establish the following abbreviated briefing schedule: that Defendants file any opposition on or before August 5, 2026, and that Plaintiff file any reply on or before August 7, 2026, or such other abbreviated schedule as the Court determines appropriate. Plaintiff does not oppose a reasonable corresponding adjustment to any presently applicable pleading deadline that the Court determines necessary to avoid prejudice to Defendants.

Pursuant to S.D. Ohio Civ. R. 7.3(b), Plaintiff attempted to confer with counsel for Defendants before filing by electronic mail on the morning of July 31, 2026. Defendants' counsel was unable to respond.

## IX.  RELIEF REQUESTED

Plaintiff respectfully requests that the Court modify the July 27, 2026, Order to add one priority-processing condition, leaving every other term of the Order, including its sixty-day duration and September 25, 2026 expiration date, undisturbed:

1. Defendants, acting through the National Guard Bureau, shall complete priority processing of Items 2, 3, 4, 5, 7, and 8 of Plaintiff's June 9, 2026, NGB request, together with the NGB Staff Summary Sheet, control number 1304366; the July 16, 2013 CNGB memorandum; the NGB-JA memorandum; and any portion of the associated action package addressing character of service.

2. Defendants, acting through the United States Army Human Resources Command, shall complete priority processing of Items 2 through 6, 8, and 9 of Plaintiff's June 9, 2026 HRC request.

3. Defendants, acting through the United States Army Human Resources Command, shall complete priority processing of Category L, Items 45 through 47, of Plaintiff's April 8, 2026, HRC request concerning MEB/PDES initiation, referral, diversion, denial, disability-processing screening, and any determination that MEB/PDES referral was not required.

4. On or before August 21, 2026, each component shall, as to each priority item: (a) produce all responsive nonexempt records and reasonably segregable portions; (b) identify any responsive record withheld in whole or in part and the exemption or other authority relied upon; (c) identify any referral or consultation, the receiving component, and the date of referral; or (d) if no responsive record was located, provide a declaration under 28 U.S.C. § 1746 identifying the offices, repositories, and systems searched, briefly describing the search methods, and stating the result.

5. Production may be made on a rolling basis before August 21, 2026.

6. The condition does not require creation of a new substantive agency record, adjudicate any FOIA exemption or the merits of Plaintiff's military-medical contentions, or waive any party's position concerning the ultimate adequacy of the searches.

7. All other provisions of the July 27, 2026, Order remain in full force and effect.

If the Court concludes that Rule 15(d) supplementation is necessary, Plaintiff alternatively requests leave to file the narrowly limited supplemental pleading described in Part III. Plaintiff further requests the abbreviated briefing schedule stated in Part VIII and such other relief as the Court deems just.

Respectfully submitted,


s/ Michael Dean Vaughan
Michael Dean Vaughan
Plaintiff, pro se
500 Leo Drive
Hamilton, Ohio 45013
(859) 743-1355
warhacker6@gmail.com
Dated: July 31, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on the date set forth below, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record, including Linda Mindrutiu, Assistant United States Attorney, counsel for Defendants, at linda.mindrutiu@usdoj.gov.

Dated: July 31, 2026

s/ Michael Dean Vaughan
Michael Dean Vaughan
Plaintiff, pro se